F I L E D
United States Court of Appeals
Tenth Circuit

DEC 18 1997

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

_____

CHERYL BAUCHMAN, as parent and guardian for Rachel Bauchman,

    Plaintiff-Appellant,

v.

WEST HIGH SCHOOL; SALT LAKE CITY SCHOOL DISTRICT; RICHARD TORGERSON; WILLIAM BOSTON; GENE BONELLA; TERESA PIELE; DOLORES RILEY; DARLINE ROBLES; DALE MANNING; MARY JO RASMUSSEN,

    Defendants-Appellees,

and

LEILA QUINONES BARELA, by and through her father, Luke J. Barela; LUKE J. BARELA, in his own capacity; TAMRA M. BADGER, by and through her parent and guardian, William A. Badger; WILLIAM A. BADGER, in his own capacity; CINDY R. BADGER; ERIC MICHAEL NIELSEN, by and through his parent and guardian Greg Nielsen; GREG NIELSEN, in his own capacity; JO RITA NIELSEN; HEATHER PETTIT, by and through her parent and guardian, Ralph Pettit; RALPH PETTIT, in his own capacity; ELAINE PETTIT; JOY M. WARTHEN, by and through her parent and guardian, Lee Warthen; ALEXANDER B. WARTHEN, by and through his parent and guardian, Lee Warthen; LEE WARTHEN, in his own capacity; BARBARA WARTHEN; STEVEN C. EROR, JR., by and through his parent and guardian, Steven C. Eror; STEVEN C. EROR, in his own capacity; JUDY H. ERROR;

Nos. 95-4084 &
96-4101

JANE CURTIS, by and through her parent and guardian, Marvin R. Curtis, Jr.; MARVIN R. CURTIS, JR., in his own capacity; JOAN C. CURTIS,

     Defendants-Intervenors.

------------------------------

PRESBYTERIAN CHURCH (U.S.A.); UNITED CHURCH BOARD FOR HOMELAND MINISTRIES OF THE UNITED CHURCH OF CHRIST; AMERICAN JEWISH COMMITTEE; ANTI-DEFAMATION LEAGUE; GENERAL CONFERENCE OF SEVENTH-DAY ADVENTISTS; UNION OF AMERICAN HEBREW CONGREGATIONS,

     Amicus Curiae.

---

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 95-CV-506)**

---

Andrew C. Hruska, New York, New York (Edward A. Harris, Georgina E. Hayden, Michael W. Martin and Joseph E. Neuhaus, New York, New York; Ross C. Anderson and Nathan B. Wilcox of Anderson & Karrenberg, Salt Lake City, Utah, with him on the briefs), for Plaintiff-Appellant.

David J. Jordan, of Stoel Rives LLP, Salt Lake City, Utah, and Debra J. Moore, Assistant Attorney General, Salt Lake City, Utah (Kenneth R. Black of Stoel Rives LLP, Salt Lake City, Utah, with them on the briefs), for Defendants-Appellees.

Eric W. Treene (Kevin J. Hasson and Nancy E. Smith of The Becket Fund for Religious Liberty, Washington, D.C., with him on the briefs) for Defendants-Intervenors.

Marc D. Stern and Lois C. Waldman of The American Jewish Congress, New

York, New York; Colby A. Smith and Alan H. Scheiner of Debevoise & Plimpton, New York, New York; Judith E. Schaeffer and Elliot M. Mincberg of People for the American Way, Washington, D.C.; Steven K. Green and Julie A. Segal of Americans United for Separation of Church and State, Washington, D.C., filed amici curiae briefs.

---

Before **BRORBY, BARRETT** and **MURPHY**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

---

I.      INTRODUCTION

Rachel Bauchman, by and through her mother and guardian, Cheryl Bauchman sued her music teacher, Mr. Richard Torgerson, West High School, the Salt Lake City School District and several West High School and School District Administrators, claiming that defendants violated the Establishment, Free Exercise and Free Speech clauses of the United States Constitution and her civil rights under 42 U.S.C. § 1983 (1994), her rights under the Religious Freedom and Restoration Act, 42 U.S.C. § 2000bb (1994), and the Religion and Speech clauses of the Utah Constitution.

The constitutional issues raised in this appeal are issues of acute public interest -- issues which evoke diverse opinions and strong emotions. The fact Ms. Bauchman's claims focus on religious neutrality in public schools only intensifies

that interest and emotion.[1]  This is no more true than in Salt Lake City, Utah -- a community and state whose unique social and political history reveals a longstanding tension involving the separation of church ("The Church of Jesus Christ of Latter-day Saints" or "Mormon Church") and state.[2]

Acknowledging this unique history and tension, we have taken particular care in studying Ms. Bauchman's claims and legal arguments.  We take seriously our obligation to uphold the First Amendment of the Constitution, which fundamentally operates to protect minority interests.  Our study of the relevant facts and law leads us to affirm the district court's dismissal of Ms. Bauchman's complaint and denial of her motion to amend the complaint.

## II.    BACKGROUND

---

[1]  As the United States Supreme Court has recognized:

The public school is at once the symbol of our democracy and the most pervasive means for promoting our common destiny.  In no activity of the State is it more vital to keep out divisive forces than in its schools, to avoid confusing, not to say fusing, what the Constitution sought to keep strictly apart.

*Illinois ex rel. McCollum v. Board of Education*, 333 U.S. 203, 231 (1948) (Frankfurter, J., concurring).

[2]  For an excellent discussion of this unique history see *Society of Separationists, Inc. v. Whitehead,* 870 P.2d 916 (Utah 1993) (Utah Supreme Court upheld Salt Lake City Council's practice of permitting prayer during opening portion of council meetings).

A.    SUMMARY OF FACTS AND ALLEGATIONS

Rachel Bauchman was a sophomore at Salt Lake City's West High School during the 1994-95 school year.  During that same year, Ms. Bauchman auditioned for and was admitted into Mr. Richard Torgerson's *a capella* choir class (the "Choir"), an elective course offered for credit.

By way of her original complaint and proposed amended complaint, Ms. Bauchman, who is Jewish, generally alleges Mr. Torgerson "engaged for many years, and continues to engage, in the advocacy, promotion, endorsement and proselytizing of his [Mormon] religious beliefs and practices" during his public school classes and Choir performances.  More specifically, she claims (1) as a member of the Choir she was required to perform a preponderance of Christian devotional music; (2) Mr. Torgerson selected songs for the religious messages they conveyed; (3) the Choir was required to perform Christian devotional songs at religious sites dominated by crucifixes and other religious symbols; (4) Mr. Torgerson selected religious sites for Choir performances with the purpose and effect of publicly identifying the Choir with religious institutions; (5) Mr. Torgerson berated and ostracized students, like herself, who dissented against his religious advocacy; (6) Mr. Torgerson covertly organized a Choir tour for select Choir members to perform religious songs at religious venues in southern

California; and (7) Mr. Torgerson deliberately scheduled the Choir to sing two explicitly Christian devotional songs during West High School's 1995 graduation. Ms. Bauchman also presents a long list of Mr. Torgerson's alleged unconstitutional practices as a public school teacher beginning some seventeen years prior to Ms. Bauchman's enrollment in his class. She alleges the remaining defendants[3] had knowledge of but consistently failed to take any effective measures to stop Mr. Torgerson from promoting religion in his Choir classes.

Ms. Bauchman left West High School and enrolled in a private school for the 1996-97 school year -- her senior year. Although she expressed a desire to sing in the Choir during her senior year, she declined an invitation to audition for the 1996-97 Choir. In June 1997, subsequent to oral argument in this appeal, Ms. Bauchman graduated from high school. Hence, she will no longer have occasion to enroll in Salt Lake City public schools.

---

[3] During all relevant time periods, Defendant William Boston was Principal of West High School; Defendants Gene Bonella and Teresa Piele were assistant principals; Defendant Dolores Riley was the School District's Minority Liaison Coordinator; Defendant Darline Robles was the School District Superintendent beginning in January 1995; Defendant Dale Manning was the School District Interim Acting Superintendent from August 1994 - January 1995; and Defendant Mary Jo Rasmussen was the Salt Lake City School Board President.

B.    PROCEDURAL HISTORY

Ms. Bauchman filed her complaint requesting declaratory and injunctive relief as well as damages at the end of the 1994-95 school year. Along with the complaint, Ms. Bauchman filed a Motion for a Temporary Restraining Order and Preliminary Injunction, seeking specifically to enjoin the Choir's planned performance of two songs at West High School's 1995 graduation, and more generally, to enjoin the defendants from compelling the Choir to perform or practice Christian devotional songs. Following an emergency hearing, which dealt solely with the evidence and issues pertaining to the graduation songs, the district court denied Ms. Bauchman's motion for emergency injunctive relief. The district court deliberately avoided taking evidence on or ruling with regard to Ms. Bauchman's request for broader, preliminary injunctive relief, noting that such request would require an evaluation of the merits of her constitutional claims as a whole. Ms. Bauchman nevertheless interpreted the district court's order as a final order denying all requested injunctive relief and filed her first appeal to this court.[4] *Bauchman v. West High School*, No. 95-4084.

_____

[4] Ms. Bauchman also requested an injunction pending appeal, which we granted, thereby enjoining the singing of two songs, "The Lord Bless You and Keep You" and "Friends," by the Choir at West High School's 1995 graduation ceremonies. When a group of students and members of the audience sang "Friends" notwithstanding this court's injunction, Ms. Bauchman petitioned for an adjudication of contempt. We partially remanded the matter to the district court judge to act as special master to conduct whatever proceedings were necessary to

Meanwhile, both Mr. Torgerson and the School District moved to dismiss Ms. Bauchman's complaint. They were joined by a group of Choir students and their parents who sought and were granted leave to intervene as defendants. For purposes of considering the motions to dismiss, the district court permitted Ms. Bauchman to file a "Verified Supplemental Pleading" containing allegations relating to the defendants' conduct at West High School's 1995 graduation exercises. After briefing and oral argument, the district court granted defendants' motions and dismissed the complaint.

Ms. Bauchman then filed a Motion to Alter or Amend Judgment and for Reconsideration of Order Granting Defendants' Motions to Dismiss pursuant to Fed. R. Civ. P. 59(e). In the alternative, Ms. Bauchman sought leave to amend her complaint and proffered a proposed amended complaint together with eight affidavits. The proposed amended complaint included additional allegations regarding the knowledge and actions of the individual school district defendants, numerous allegations pertaining to Mr. Torgerson's conduct prior to the 1994-95 school year and, for the first time, allegations that Mr. Torgerson selected religious songs and performance sites for the purpose of promoting religion. The

resolve the allegations of the contempt petition. After careful review of the district court's report, findings of fact and recommendation, we denied Ms. Bauchman's contempt petition.

district court denied Ms. Bauchman's motion for reconsideration, but held her motion to amend in abeyance pending discovery on the issue of whether, during the 1994-95 school year, Mr. Torgerson's "selection and rehearsal of Christian songs as part of the music class curriculum, and the performance of such songs by the [Choir] at religious venues was primarily for a secular purpose or primarily for the purpose of promoting or proselytizing religion."  Following completion of discovery, Ms. Bauchman renewed her motion for leave to amend, electing to stand on the amended pleading proffered prior to discovery; she did, however, present the district court with numerous affidavits and deposition excerpts to consider in conjunction with the proposed amended complaint.  The district court denied Ms. Bauchman's renewed motion after full briefing and oral argument.

Ms. Bauchman's second appeal contests the district court's orders (1) dismissing her complaint, (2) denying her motion for reconsideration and (3) denying her motion for leave to amend her complaint.  *Bauchman v. West High School*, No. 96-4101.  We consolidated Ms. Bauchman's two appeals for purposes of argument and disposition.  Additionally, we permitted The American Jewish Congress to file a brief as *amicus curiae* in appeal No. 95-4084, and Americans United for Separation of Church and State and People for the American Way, Presbyterian Church (U.S.A.), United Church Board for Homeland Ministries of

the United Church of Christ, The American Jewish Committee, Anti-Defamation League, General Conference of Seventh-Day Adventists, and Union of American Hebrew Congregations to file briefs as *amici curiae* in appeal No. 96-4101.

In June 1997, subsequent to oral argument, the Defendant-Intervenors filed a "Suggestion of Mootness." Mr. Torgerson and the School District joined in this suggestion, which asserts Ms. Bauchman's graduation from high school renders her claims for injunctive and declaratory relief moot and requests that we dismiss those claims. Mr. Torgerson and the School District further assert Ms. Bauchman's damage claims under 42 U.S.C. § 1983 should be dismissed as (1) the individual defendants are qualifiedly immune, and (2) Ms. Bauchman has failed to allege sufficient facts to establish supervisory liability against the school district. In response, Ms. Bauchman denies any of her claims are moot and urges this court to retain jurisdiction over all aspects of her appeal, except for her Religious Freedom Restoration Act claims.[5]

---

[5] As Ms. Bauchman does not appeal the dismissal of her Religious Freedom and Restoration Act claim, nor, apparently, the dismissal of her claims against the High School itself, we do not further address those claims.

III.  MOOTNESS AND PENDENT JURISDICTION DETERMINATIONS

      A.     DISMISSAL OF APPEAL NO. 95-4084

As indicated above, Ms. Bauchman's first appeal challenges the district court's denial of her Motion for Temporary Restraining Order and Preliminary Injunction.  Notably, however, this court's injunction pending appeal and subsequent order adopting the district court's recommendation to dismiss Ms. Bauchman's contempt petition effectively resolved all issues pertaining to the Choir's performance of "Friends" and "The Lord Bless You and Keep You" at West High School's 1995 graduation.  After carefully examining the briefs and record in both appeals, we conclude that all issues concerning the merits of Ms. Bauchman's broader request for a preliminary injunction are subsumed into the issues raised in her second appeal, *Bauchman v. West High School*, No. 96-4101.  We therefore dismiss appeal No. 95-4084 as moot and limit our discussion to the issues raised in appeal No. 96-4101.

      B.     DISMISSAL OF DECLARATORY AND INJUNCTIVE CLAIMS

This court may only adjudicate live controversies -- controversies that exist at all stages of appellate review, not just on the date the lawsuit or appeal is initiated.  *Fischbach v. New Mexico Activities Ass'n*, 38 F.3d 1159, 1160 (10th Cir. 1994).  We have held that when an individual graduates from school there no

longer exists a live controversy necessary to support an action to participate in interscholastic activity. Accordingly, such action is deemed moot upon graduation. *Id*. at 1160. As Ms. Bauchman has now graduated from high school, there can be no reasonable expectation that she could again be subjected to the alleged unconstitutional conduct of Mr. Torgerson or the other Salt Lake City School District defendants. The defendants no longer have the power or opportunity to adversely affect Ms. Bauchman's constitutional rights. We therefore agree with defendants Ms. Bauchman's claims for injunctive relief are moot and dismiss her appeal as to those claims. For these same reasons we deny Ms. Bauchman's Application for an Injunction Pending Appeal filed August 21, 1996.

Although the question is a closer one, we further agree with defendants Ms. Bauchman's claims for declaratory relief are now moot. *Green v. Branson*, 108 F.3d 1296 (10th Cir. 1997) controls our decision. Since Ms. Bauchman has successfully completed her secondary education, she is no longer subject to the curriculum chosen by or the conduct of Mr. Torgerson or the other school district defendants. The entry of a declaratory judgment in Ms. Bauchman's favor therefore would have no effect on the defendants' behavior toward her as a student. It would merely amount to a declaration the defendants had violated her

constitutional rights. Thus, as in *Green*, declaratory relief would be superfluous to the adjudication of Ms. Bauchman's §1983 damages claim. *Id*. at 1299, 1300.

Ms. Bauchman's attempt to salvage her claims for declaratory relief by suggesting both she and her mother, Cheryl Bauchman, "maintain an active legal interest in the education of the younger Bauchman children," is to no avail. The only rights and interests asserted in the complaint and amended complaint are those personal to Ms. Rachel Bauchman. Her mother is referenced in the pleadings solely as the "parent and guardian" (*i.e.* representative) of Ms. Rachel Bauchman. Under these circumstances where (1) the parent is not described as a plaintiff, (2) no theories have been advanced to support an individual action by the parent, and (3) the complaint contains no allegations as to other children, we conclude Ms. Rachel Bauchman is the only plaintiff before the court. *See Adler v. Duval County Sch. Bd.*, 112 F.3d 1475, 1478 (11th Cir. 1997); *see also Laurenzo v. Mississippi High Sch. Activities Ass'n*, 662 F.2d 1117, 1120-21 (5th Cir. 1981). As the law requires that Ms. Bauchman's legal interest in the outcome of this appeal be greater than the mere satisfaction of a declaration she was wronged, we deem her claims for declaratory relief moot and dismiss her appeal

as to those claims.[6]

## C.    REMAND FOR DISMISSAL OF STATE CONSTITUTIONAL CLAIMS

Ms. Bauchman asserts defendants' conduct violated her state as well as federal constitutional rights. More specifically, she alleges the defendants' policies and actions (1) "constitute the enactment of a law respecting the establishment of religion and infringing plaintiff's right of conscience in violation of Article I, Section 4 of the Constitution of Utah," (2) "have prevented [her] from freely exercising her own religion ... in violation of Article I, Section 4 of the Constitution of Utah," (3) "deprived [her] of her freedom of speech ... in violation of Article I, Section 15 of the Constitution of Utah," and (4) "deprived [her] of her rights to a public education free from sectarian control in violation of

---

[6] Relying on *Anderson v. Green*, 513 U.S. 557 (1995) (*per curiam*), Ms. Bauchman requests that we remand her claims for declaratory and injunctive relief to the district court with instructions to vacate all parts of the district court's decisions that concerned those claims. While we agree with Ms. Bauchman the circumstances in this case involuntarily mooted her declaratory and injunctive claims, this case differs from *Anderson* in one important respect -- in *Anderson* the Supreme Court dismissed the entire appeal, not just certain claims. *Id*. at 560. Since we proceed to decide the substantive merits of Ms. Bauchman's § 1983 claim, we decline to parse out and vacate certain portions of the district court's decision which, in fact, may be inseparable from the substantive issues we address. However, by dismissing Ms. Bauchman's appeal as to her claims for injunctive and declaratory relief we do not intend to prohibit the parties from making any appropriate requests to the district court regarding its final disposition of those claims.

Article X, Section 1 of the Constitution of Utah."  After disposing of Ms. Bauchman's federal claims, the district court dismissed Ms. Bauchman's state constitutional claims on the merits, concluding the state constitutional provisions upon which Ms. Bauchman relies "are not self-executing and contain no provisions or mechanism for a court action or remedy."  The district court further ruled Ms. Bauchman's state law claims were barred by the Utah Governmental Immunity Act, Utah Code Ann., § 63-30-3(1).

The district court considered Ms. Bauchman's state law claims under the doctrine of pendent jurisdiction.  Pendent jurisdiction is exercised on a discretionary basis, keeping in mind considerations of judicial economy, convenience and fairness to the litigants.  *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *see also* 28 U.S.C. § 1367(c)(3).  The United States Supreme Court has counseled, pendent jurisdiction "need not be exercised in every case in which it is found to exist....  Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."  *Gibbs*, 383 U.S. at 726.  If federal claims are dismissed before trial, leaving only issues of state law, "the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."  *Carnegie-Mellon University v. Cohill*, 484 U.S. 343,

350 (1988); *Gibbs*, 383 U.S. at 726.

The district court dismissed Ms. Bauchman's federal claims on the pleadings. We are upholding that decision. The state law questions presented in this appeal concern whether the Utah Constitution provides a private right of action against government establishment of religion, infringement of freedom of conscience and sectarian control of public schools. Utah courts have never squarely addressed this issue. Accordingly, any exercise of federal jurisdiction over Ms. Bauchman's state claims seriously implicates principles of comity. Under these circumstances, *Carnegie-Mellon University* and *Gibbs* counsel us to leave the development and application of private causes of action under the Utah Constitution to the Utah courts. *See Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995). The beneficial effect of permitting a Utah state court to determine the private rights of action under the Utah Constitution far outweighs any negative consequences (*i.e.*, delay) of declining to exercise pendent jurisdiction. We therefore decline to review the merits of Ms. Bauchman's state law claims. Instead, we conclude the district court abused its discretion by exercising jurisdiction over those claims and remand Ms. Bauchman's state law claims to the district court with instructions to dismiss without prejudice for want of federal jurisdiction.

IV.  DISCUSSION

Having narrowed our adjudication to Ms. Bauchman's § 1983 claim, we proceed to address the threshold inquiry in the examination of such a claim: whether Ms. Bauchman has sufficiently alleged a violation of her clearly established constitutional rights.  Because we hold the facts alleged by Ms. Bauchman cannot be held to state a claim for denial of her constitutional rights under the Free Speech, Free Exercise and Establishment clauses of the First Amendment, we do not further consider whether the various defendants are entitled to immunity.  *Siegert v. Gilley*, 500 U.S. 226, 227, 233 (1991); *see also*, *Doe v. Bagan*, 41 F.3d 571, 577 n.7 (10th Cir. 1994).

A.    DISMISSAL OF MS. BAUCHMAN'S ORIGINAL COMPLAINT

The district court dismissed Ms. Bauchman's original complaint *inter alia* because the complaint and supplemental pleading, construed in a light most favorable to Ms. Bauchman, failed to allege sufficient facts to support her Establishment, Free Exercise and Free Speech claims.  On appeal, Ms. Bauchman argues her original complaint satisfied liberal federal pleading requirements and adequately stated a cause of action under the federal constitution.

1.     Standard of Review.

It is well established the sufficiency of a complaint to withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is a question of law we review de novo.[7] *Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir. 1995). In conducting such review, we must accept all the well-pleaded facts of the complaint as true and must construe them in the light most favorable to the plaintiff. *Id.*; *Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 586 (10th Cir. 1994). Dismissal is appropriate only if the plaintiff can prove no set of facts in support of the claim entitling her to relief. *Ramirez*, 41 F.3d at 586. However, counsel may not overcome pleading deficiencies with arguments that extend beyond the allegations contained in the complaint. The complaint itself must show Ms. Bauchman is "entitled to relief" under each claim raised. Fed. R. Civ. P. 8(a))(2).

---

[7] We acknowledge this court has never settled on a standard for review of "constitutional facts" such as a district court's findings concerning First Amendment violations. *Gaylor v. United States*, 74 F.3d 214, 216 (10th Cir.), *cert. denied*, 116 S. Ct. 1830 (1996); *Robinson v. City of Edmond*, 68 F.3d 1226, 1230 n.7 (10th Cir. 1995), *cert. denied*, 116 S. Ct. 1702. Nevertheless, we decline an opportunity to do so in this case as the facts are insufficient to support Ms. Bauchman's constitutional claims under either a de novo or a clearly erroneous standard.

2.      Sufficiency of Allegations to Support Ms. Bauchman's First Amendment Claims

a.      Establishment Clause.

The gravamen of Ms. Bauchman's complaint is her claim the defendants' policies and actions violate the Establishment Clause of the First Amendment. The First Amendment states the government "shall make no law respecting an establishment of religion."  This prohibition extends to state government, including the Utah public schools, by operation of the Fourteenth Amendment.

Determining whether Ms. Bauchman has alleged facts sufficient to support her claim that defendants have violated this prohibition is not an easy task, as there is no bright line standard we can apply.  The United States Supreme Court repeatedly has recognized there can be no precise Establishment Clause test capable of ready application, and therefore has resisted confining such sensitive analyses to "any single test or criterion." *Lynch v. Donnelly*, 465 U.S. 668, 678-79 (1984).  Moreover, the Supreme Court has never specifically addressed circumstances like those presented here, *i.e.*, the constitutionality of a public school teacher's conduct in selecting course materials with religious content as part of a broader, secular curriculum.  To the extent the Supreme Court has attempted to prescribe a general analytic framework within which to evaluate Establishment Clause claims, its efforts have proven ineffective.  Indeed, many

believe the Court's modern Establishment Clause jurisprudence is in "hopeless disarray," *Rosenberger v. University of Virginia*, 55 U.S. 819, 861 (1995) (Thomas, J. concurring), and in need of "[s]ubstantial revision." *County of Allegheny v. American Civil Liberties Union*, 492 U.S. 573, 656 (1989) (Kennedy, J. concurring in part and dissenting in part).

Our attempt to glean an appropriate standard for this case from existing, muddled Establishment Clause precedent begins with *Lemon v. Kurtzman*, 403 U.S. 602 (1971), which is recognized as the benchmark case for Establishment Clause analysis. Applying *Lemon*, government action does not violate the Establishment Clause so long as it (1) has a secular purpose, (2) does not have the principal or primary effect of advancing or inhibiting religion, and (3) does not foster an excessive entanglement. 403 U.S. at 612-13.

Beginning in the 1980s, however, the *Lemon* analysis came under vigorous attack by Justices and commentators alike. *See*, *e.g.*, *County of Allegheny*, 492 U.S. at 655 (Kennedy, J. concurring in part and dissenting in part) (does not advocate or adopt *Lemon* test as primary guide for resolving difficult Establishment Clause issues); *Texas Monthly, Inc. v. Bullock*, 489 U.S. 1, 33 (1989) (Scalia, J., dissenting) (use of *Lemon* to deny tax exemption not founded

on Constitution, precedent, or history); *Edwards v. Aguillard*, 482 U.S. 578, 639-40 (1987) (Scalia, J., dissenting) (criticizing inconsistent application of *Lemon* test); *Aguilar v. Felton*, 473 U.S. 402, 419 (1985) (Burger, C.J., dissenting) (*Lemon* test too formalistic); *Wallace v. Jaffree*, 472 U.S. 38, 112 (1985) (Rehnquist, C.J., dissenting) (*Lemon* test blurred and indistinct); *Lynch*, 465 U.S. at 679 (*Lemon* test not overriding criteria); *Mueller v. Allen*, 463 U.S. 388, 394 (1983) (*Lemon* test nothing but helpful signpost); *Marsh v. Chambers*, 463 U.S. 783, 792-95 (1983) (Court ignored *Lemon* in favor of historical argument); *see also*, Stuart W. Bowen, Jr., *Is Lemon a Lemon? Crosscurrents in Contemporary Establishment Clause Jurisprudence*, 22 St. Mary's L.J. 129 (1990) ("the Court should clarify its [Establishment Clause] analysis by abandoning Lemon and adopting a test that more accurately reflects the framers' original understanding of the word 'establishment'").  Acknowledging *Lemon's* weaknesses, Justice O'Connor seized the opportunity in *Lynch v. Donnelly* to draft a concurring opinion encouraging the Court to refine the *Lemon* analysis to focus more on whether the government is "endorsing" religion.  465 U.S. at 687-94.

Applying Justice O'Connor's refined analysis, the government impermissibly endorses religion if its conduct has either (1) the purpose or (2) the effect of conveying a message that "religion or a particular religious belief is

-21-

favored or preferred." *County of Allegheny*, 492 U.S. at 592-93; *see also Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 763 (1995) (plurality); *Lynch* 465 U.S. at 687-94 (O'Connor, J., concurring). Recent cases suggest the purpose component of the endorsement test should evaluate whether the government's "actual" purpose is to endorse or disapprove of religion (*i.e.*, did the government intend to endorse or disapprove of religion); *Edwards*, 482 U.S. at 585; *Jaffree*, 472 U.S. at 56 (adopting Justice O'Connor's revision of the purpose component from *Lynch v. Donnelly*). The effect component, on the other hand, should evaluate whether a "reasonable observer," aware of the history and context of the community in which the conduct occurs, would view the practice as communicating a message of government endorsement or disapproval. *Capitol Square*, 115 S. Ct. at 2455 (O'Connor, J., concurring).

Justice O'Connor's "endorsement test" is now widely accepted as the controlling analytical framework for evaluating Establishment Clause claims. *See* James M. Lewis & Michael L. Vild, *A Controversial Twist of Lemon: The Endorsement Test as the Establishment Clause Standard*, 65 Notre Dame L. Rev. 671 (1990). It would be wrong, however, to suggest the Court is unanimous in its adoption of the endorsement test. Moreover, even the Justices who have adopted the endorsement test do not agree on how it should be applied. *Id.* at 687-88.

For example, although the Court has indicated a failure to satisfy the purpose component of the endorsement test alone is sufficient to invalidate government action, *Edwards*, 482 U.S. at 585; *cf., id*. at 610 (Scalia, J., dissenting) (questioning the premise that government action can be invalidated on the basis of motivation alone, without regard to the effect), the Court rarely has decided cases based solely on the purpose component. *See Jaffree*, 472 U.S. at 75 (O'Connor, J. concurring). When it has, the overriding religious purpose of the government action has been obvious, leaving little need to elaborate on the appropriate scope of the purpose inquiry. *See Edwards*, 482 U.S. at 613 (Scalia, J., dissenting) (citations omitted); *Lynch*, 465 U.S. at 680 (citations omitted). To the extent the Court has delved into the government's subjective intent in its evaluation of the actual purpose, such approach has been openly condemned by two members of the present Court -- Chief Justice Rehnquist and Justice Scalia. *Edwards*, 482 U.S. at 610 (Rehnquist, C.J, and Scalia, J., dissenting). According to Justice Scalia, who has proposed eliminating the purpose component altogether, discerning the government's subjective intent is "almost always an impossible task ... [t]o look for *the sole purpose* of even a single legislator is probably to look for something that does not exist." *Id*. at 636-37 (emphasis in original). Consequently, despite Sisyphean efforts, application of this component yields unprincipled results. *Id*. at 636; *Jaffree*, 472 U.S. at 112 (Rehnquist, J.,

dissenting).

Having struggled to meaningfully apply the purpose component of the endorsement test to the alleged Establishment Clause violation in this case, we agree it is an unworkable standard that offers no useful guidance to courts, legislators or other government actors who must assess whether government conduct goes against the grain of religious liberty the Establishment Clause is intended to protect. Nevertheless, the uncertainty surrounding the present Court's position regarding the appropriate scope of the endorsement test and the appropriate Establishment Clause analysis, in general, cautions us to apply both the purpose and effect components of the refined endorsement test, together with the entanglement criterion imposed by *Lemon,* when evaluating Ms. Bauchman's Establishment Clause claim.[8] To survive a motion to dismiss, Ms. Bauchman

---

[8] The Court also has examined the coercive effect a school-sponsored religious activity may have on students. *See Lee v. Weisman*, 505 U.S. 577, 592 (1992). In *Lee*, the Court reaffirmed its longstanding recognition "that prayer exercises in public schools carry a particular risk of indirect coercion," and rejected the government's argument that providing a student with the option of not attending her high school graduation excused any inducement or coercion inherent in the ceremony itself. *Id*. at 592-99. According to the Court, it is overly formalistic to suggest a teenage student has a real choice not to attend her graduation -- "one of life's most significant occasions." *Id*. at 595.

For reasons discussed more thoroughly below, we do not believe the singing of religious songs alone constitutes prayer. Nor do we consider the singing of religious songs in religious venues to constitute prayer without

-24-

must allege facts which, accepted as true, suggest a violation of any part of this analysis.

Ms. Bauchman's factual allegations concerning violation of her Establishment Clause rights fall into three categories: the performance of religious music, the performance at religious sites, and the public ridicule and harassment she experienced as a result of the defendants' collective response to her objections. More precisely, Ms. Bauchman first claims she was repeatedly required to practice and publicly perform Christian devotional music with lyrics that sing praise to "Jesus Christ our savior" and "Jesus Christ our Lord," and that include other devotional references to God. She alleges a preponderance of the religious songs represented the works of contemporary Christian songwriters. Second, Ms. Bauchman claims Mr. Torgerson selected explicitly Christian religious sites such as the Church of the Madeleine, the First Presbyterian Church and Temple Square for Choir performances. She alleges these sites are dominated by crosses and other religious images. Finally, Ms. Bauchman alleges when she and her parents expressed their opposition to Mr. Torgerson's selection of songs

additional facts showing that such activity took place in a worshipful context. The facts as alleged by Ms. Bauchman simply do not identify a religious activity analogous to that addressed in *Lee* or other school prayer cases. Accordingly, we conclude a coercion analysis is inapplicable to the facts at hand.

and performance venues, Mr. Torgerson (1) criticized Ms. Bauchman in front of her classmates, "specifically and by inference"; (2) blamed Ms. Bauchman and her parents for the cancellation of the Choir's spring tour and rebuffed Ms. Bauchman's inquiry regarding the "Covert Tour" organized for Christian Choir members "under the guise of creating a Boy Scout Explorer Post"; (3) "directed the Choir class's attention to the fact that plaintiff is a Jew in such a way as to emphasize that her beliefs deviated from those of the Christian majority's"; (4) shared a letter he had received from Mr. Bauchman with the father of another Choir member "with the expectation and desire that [the Choir member's father] would distribute the letter to other parents of students in the Choir Class so as to incite those parents and their children to punish [Ms. Bauchman] and her parents by means of public ridicule and vilification"; and (5) stated he would not change his conduct. Ms. Bauchman alleges Mr. Torgerson "intended to promote hostility toward and ridicule of [Ms. Bauchman] by her fellow students as punishment for her assertion of her constitutional rights or in an attempt to pressure her to abandon those rights," and as a result of Mr. Torgerson's actions, she "was subjected to public ridicule and humiliation, manifesting itself, in part, in racial and religious epithets from her fellow students."

We first consider whether allegations regarding the singing of religious

-26-

songs at religious sites, alone, state a claim under the criteria we have set forth. Notably, in her original complaint, Ms. Bauchman alleges no facts to expressly indicate the purpose for selecting a majority of religious songs to be sung at religious venues or that the Choir curriculum has the effect on a reasonable observer of advancing or endorsing religious beliefs. Nor does she allege she was required to sing religious songs as part of a religious exercise per se. Rather, Ms. Bauchman simply alleges Mr. Torgerson selected and required her to perform a preponderance of "Christian devotional" songs in places dominated by crosses and other religious symbols. We will not infer an impermissible purpose or effect in the absence of any supporting factual allegations. *See Lynch*, 465 U.S. at 680 (district court erroneously inferred from religious nature of crèche that city had no secular purpose for display); *Mueller v. Allen*, 463 U.S. 388, 394-95 (1983) (Court is reluctant to attribute unconstitutional motives to the states). However, we will evaluate whether Ms. Bauchman's allegations concerning the selection and performance of songs alone suggest religious endorsement or the school's excessive entanglement with religion.

Endorsement

*Vis à Vis Purpose*

Notwithstanding existing uncertainty regarding the propriety or scope of this component of the endorsement test, certain principles governing our inquiry into the government's actual purpose are beyond dispute. Namely, the Constitution does not require that the purpose of every government-sanctioned activity be unrelated to religion. *Jaffree*, 472 U.S. at 64; *City of Albuquerque v. Browner*, 97 F.3d 415, 428 (10th Cir. 1996), *cert. denied*, 118 S. Ct. 410 (1997). Courts have long recognized the historical, social and cultural significance of religion in our lives and in the world, generally. Courts also have recognized that "a variety of motives and purposes are implicated" by government activity in a pluralistic society. *Lynch*, 465 U.S. at 680. Accordingly, there is a legitimate time, manner and place for the discussion of religion in the public classroom. *School Dist. of Abington v. Schempp*, 374 U.S. 203, 225 (1963); *Florey v. Sioux Falls Sch. Dist. 49-5*, 619 F.2d 1311, 1315-16 (8th Cir. 1980).

To sustain her Establishment Clause claim, Ms. Bauchman therefore must allege facts indicating the defendants have no "clearly secular purpose" for selecting songs with religious content and requiring the choir to perform in religious venues. *See Jaffree*, 472 U.S. at 56 (conduct violates the Establishment

-28-

Clause if it is "entirely motivated by a purpose to advance religion"). In the alternative, Ms. Bauchman can allege facts showing that in spite of the existence of a legitimate secular purpose(s), the defendants' "actual" purpose is to endorse or disapprove of religion. *See County of Allegheny*, 492 U.S. at 592; *Edwards*, 482 U.S. at 585; *Jaffree*, 472 U.S. at 56; *Lynch*, 465 U.S. at 690 (O'Connor, J. concurring). Notably, however, we cannot allow Ms. Bauchman to support her claim with allegations focused solely on the religious component of classroom activity, since such approach would inevitably lead to invalidation of the activity under the Establishment Clause. *See Lynch*, 465 U.S. at 680. At the same time, our inquiry into the government's purpose should be "deferential and limited." *Jaffree*. 472 U.S. at 74 (O'Connor, J., concurring) We should resist attributing unconstitutional motives to the government, particularly where we can discern a plausible secular purpose. *See id*. at 74-75; *Mueller*, 463 U.S. at 394-95 (1983).

Here, we discern a number of plausible secular purposes for the defendants' conduct.[9] For example, it is recognized that a significant percentage of serious

---

[9] This is not a case in which we can evaluate the legitimacy and sincerity of a legislative statement regarding a statute's secular purpose, as the Supreme Court has so often done in its Establishment Clause cases. Moreover, since Ms. Bauchman's Complaint was dismissed pursuant to Fed. R. Civ. P. 12(b)(6), and our review therefore is limited to the allegations in her complaint, we cannot evaluate direct statements from Mr. Torgerson or the other defendants regarding the purpose for selecting religious songs and religious venues as part of the

choral music is based on religious themes or text. *See, e.g., Doe v. Duncanville Indp. Sch. Dist.*, 70 F.3d 402, 407-08 (5th Cir. 1995). Any choral curriculum designed to expose students to the full array of vocal music culture therefore can be expected to reflect a significant number of religious songs. Moreover, a vocal music instructor would be expected to select any particular piece of sacred choral music, like any particular piece of secular choral music, in part for its unique qualities useful to teach a variety of vocal music skills (*i.e.*, sight reading, intonation, harmonization, expression). Plausible secular reasons also exist for performing school choir concerts in churches and other venues associated with religious institutions. Such venues often are acoustically superior to high school auditoriums or gymnasiums, yet still provide adequate seating capacity. Moreover, by performing in such venues, an instructor can showcase his choir to the general public in an atmosphere conducive to the performance of serious choral music.

---

broader vocal music curriculum at West High School. We do not believe, however, that the procedural posture of this case should prevent us from acknowledging prevalent, archetypical secular purposes for defendants' conduct. *See Jaffree*, 472 U.S. at 75 (O'Connor, J., concurring) (reasoning even if there is no express secular purpose, a statute "should be held to have an improper purpose only if it is beyond purview that endorsement of religion or a religious belief 'was and is the law's reason for existence'") (quoting *Epperson v. Arkansas*, 393 U.S. 97, 108 (1968)). If we were so limited, Establishment Clause claims would be immune from attack under Fed. R. Civ. P. Rule 12(b)(6).

Ms. Bauchman does not allege in her complaint that defendants lacked a secular purpose. Ms. Bauchman further fails to allege any facts indicating (1) West High School's vocal music curriculum was out of step with traditional public high school vocal music curricula, (2) the acoustics and/or seating at the selected performance venues were unsuitable for the performance and public enjoyment of serious vocal music, or (3) the defendants' "actual" purpose was otherwise inconsistent with the prevalent secular objectives noted above. Ms. Bauchman's allegations instead focus solely on (1) the religious component of the Choir's activities -- she was required to practice and perform songs with religious lyrics at sites dominated by crosses and other religious images, and (2) the defendants' conduct, not in selecting such songs and venues (the challenged activity), but in response to her objections -- she was ridiculed for objecting to such songs and performance sites, and defendants inadequately and inappropriately responded to her objections. These allegations are insufficient to support her Establishment Clause claim given the obvious secular purposes for defendants' conduct. We see no reason to conclude that defendants' selection of religious songs and religious performance venues serves an impermissible purpose simply because some of those songs and venues, which undisputedly represent only part of the Choir's repertoire and performance venues, may coincide with religious beliefs different from those of Ms. Bauchman. *See Edwards*, 482 U.S. at 605 (Powell, J.,

concurring) (emphasizing that a decision respecting the subject matter to be taught in public schools does not violate the Establishment Clause simply because the material to be taught happens to coincide or harmonize with the tenets of some or all religions) (quotations omitted); *Bowen v. Kendrick*, 487 U.S. 589, 604 n.8 (1988).  Accordingly, Ms. Bauchman's complaint fails to state an Establishment Clause claim under the purpose component of the endorsement test.

*Vis à Vis Effect*

To state a claim under this component of the endorsement test, Ms. Bauchman must allege facts indicating the Choir curriculum or Choir activities have a *principle* or *primary* effect of advancing or endorsing religion.  United States Supreme Court precedent "plainly contemplate[s] that on occasion some advancement of religion will result from governmental action." *Lynch*, 465 U.S. at 683.  However, not every governmental activity that confers a remote, incidental or indirect benefit upon religion is constitutionally invalid.  *Id.*  Thus, as noted above, the Constitution does not forbid all mention of religion in public schools.  The Establishment Clause prohibits only those school activities which, in the eyes of a reasonable observer, advance or promote religion or a particular religious belief.  This is an objective inquiry, not an inquiry into whether particular individuals might be offended by the content or location of the Choir's

performance, or consider such performances to endorse religion. *Gaylor*, 74 F.3d at 217.

We believe a reasonable observer aware of the purpose, context and history of public education in Salt Lake City, including the historical tension between the government and the Mormon Church, and the traditional and ubiquitous presence of religious themes in vocal music, would perceive the following with respect to Ms. Bauchman's factual allegations concerning the Choir curriculum and performance venues: the Choir represents one of Salt Lake City's public high schools and is comprised of a diverse group of students; many of the Choir's songs have religious content -- content predominately representative of Judeo-Christian beliefs; in contrast to a church choir, this Choir also performs a variety of secular songs; the Choir's talent is displayed in the diverse array of songs performed and in a number of different public (religious and nonreligious) settings, all of which reflect the community's culture and heritage. Certainly, any given observer will give more or less meaning to the lyrics of a particular song sung in a particular venue based on that observer's individual experiences and spiritual beliefs. However, the natural consequences of the Choir's alleged activities, viewed in context and in their entirety by a reasonable observer, would not be the advancement or endorsement of religion. Ms. Bauchman's complaint

therefore fails to support a claim that the Choir curriculum or Choir activities have a principle or primary effect of endorsing religion.

Entanglement

The entanglement analysis typically is applied to circumstances in which the state is involving itself with a recognized religious activity or institution. *See Florey*, 619 F.2d at 1318. For the reasons discussed above, we have rejected the notion that Ms. Bauchman's allegations regarding the Choir's singing of religious songs in religious venues alone support a claim that defendants' conduct endorses religion. Instead, we believe a reasonable observer would conclude the selection of religious songs from a body of choral music predominated by songs with religious themes and text, and the selection of public performance venues affiliated with religious institutions, without more, amount to religiously neutral educational choices.[10] Consequently, we perceive no state involvement with recognized religious activity.

To the extent Ms. Bauchman suggests her allegations regarding past Spring

---

[10] Accordingly, we decline Ms. Bauchman's invitation to more closely evaluate the number and quality of religious songs selected for the Choir. The Constitution does not contemplate nor require judicial micro-management of the religious content of public education. Indeed, it would be entirely impractical to attempt such an endeavor.

Choir tours and a "covert" 1995 Spring tour are sufficient to support a claim of impermissible entanglement, we disagree. Ms. Bauchman fails to allege she participated in any past Spring tours and thus cannot be heard to claim her constitutional rights were violated as a result of any alleged Choir participation in religious services which may have occurred during those tours. Ms. Bauchman's allegation Mr. Torgerson "covertly organized a new Choir Class tour ... on public school property under the pretense of creating a Boy Scout 'Explorer Post'" lacks any facts to indicate such tour was conducted or actions were taken to involve the Choir in religious activity. In sum, we find no basis in Ms. Bauchman's complaint to suggest Defendants' alleged conduct amounts to unconstitutional entanglement.

Extraneous Allegations

Having determined Ms. Bauchman's allegations concerning the singing of religious songs at religious sites do not implicate the Establishment Clause, we must next address the relevance, if any, of her remaining allegations that she was subjected to public ridicule and harassment as a result of defendants' conduct. Certainly, Ms. Bauchman's allegations she was criticized and retaliated against for opposing the religious content of the Choir curriculum, taken as true, evidence a lack of sensitivity, crudeness and poor judgment unbefitting of high school students, their parents, and especially, public school teachers and administrators.

However, such claims do not rise to the level of a constitutional violation. Nor can they be used to breathe constitutional life into otherwise unactionable conduct. The fact that the defendants did not change their behavior in accordance with Ms. Bauchman's demands and reacted negatively and/or offensively to those demands simply cannot be viewed as support for her claim that the Choir's performance of religious music at religious venues furthered a religious purpose, advanced or favored religion or a particular religious belief, or otherwise entangled the public school with religion. We reject this "backdoor" attempt to substantiate an otherwise flawed constitutional claim and conclude the district court properly dismissed Ms. Bauchman's Establishment Clause claim.

b.     Free Exercise Clause.

Ms. Bauchman claims defendants violated the Free Exercise Clause by compelling her to participate in religious exercises in a public school setting, against her expressed desires and religious convictions. Her factual allegations in support of this contention can be summarized as follows: Mr. Torgerson repeatedly required Ms. Bauchman, a Jewish student, to practice and publicly perform Christian devotional music containing lyrics referencing praise to Jesus Christ and God at religious sites dominated by crosses and other religious images, as part of the regular, graded, required Choir activities. Ms. Bauchman further

alleges when she opposed such activity in the context of the Choir's Christmas concert series, Mr. Torgerson gave her the choice of not participating in the singing of songs she found offensive and told her that her nonparticipation would not adversely affect her Choir grade.[11]  Relying largely on *Lee v. Weisman*, 505 U.S. 577 (1992), Ms. Bauchman's counsel nevertheless concludes that such a choice is "constitutionally infirm", and proclaims that Ms. Bauchman's allegations therefore establish a Free Exercise violation.

To state a claim for relief under the Free Exercise Clause, Ms. Bauchman must allege something more than the fact the song lyrics and performance sites offended her personal religious beliefs.  She must allege facts demonstrating the challenged action created a burden on the exercise of her religion.  *United States v. Lee*, 455 U.S. 252, 256-57 (1982).  A plaintiff states a claim her exercise of religion is burdened if the challenged action is coercive or compulsory in nature. *See Lyng v. Northwest Indian Cemetery Protective Ass'n.*, 485 U.S. 439, 448-51 (1988); *School Dist. of Abington*, 374 U.S. at 222; *Messiah Baptist Church v. Jefferson County*, 859 F.2d 820, 824 (10th Cir. 1988), *cert. denied*, 490 U.S. 1005

---

[11]  We take judicial notice of the fact that Ms. Bauchman's opportunity to waive participation in the Christmas concerts or any other Choir activity was protected by Utah's "Recognizing Constitutional Freedoms in Public School Act," Utah Code Ann. § 53A-13-101.2, and the State Office of Education's regulations implementing that Act, Utah Admin. Code R. 277-105-5.

(1989). Therefore, to state a Free Exercise claim, Ms. Bauchman must allege facts showing she was "coerced" into singing songs contrary to her religious beliefs. *Messiah Baptist Church*, 859 F.2d at 824. This she has failed to do.

On its face, Ms. Bauchman's complaint states the songs and performances were a required, graded component of Choir participation, but she was given the option of not participating to the extent such participation conflicted with her religious beliefs. Moreover, she was assured her Choir grade would not be affected by any limited participation. We conclude the fact Ms. Bauchman had a choice whether or not to sing songs she believed infringed upon her exercise of religious freedom, with no adverse impact on her academic record, negates the element of coercion and therefore defeats her Free Exercise claim. *See Grove v. Mead School Dist. No. 354*, 753 F.2d 1528, 1533 (9th Cir.) (court held no Free Exercise violation where student was given permission to avoid classroom discussion of book *The Learning Tree*), *cert. denied*, 373 U.S. 826 (1985); *Florey,* 619 F.2d at 1318 (court held no Free Exercise violation where school board expressly provided students may be excused from activities permitted under rules outlining the bounds of permissible school activities on religious holidays), *cert. denied*, 449 U.S. 987 (1980).

The district court correctly concluded *Lee v. Weisman* fails to support Ms. Bauchman's Free Exercise claim. In *Lee,* the Supreme Court rejected the notion that providing a student an option whether to participate in graduation was sufficient to avoid the Establishment Clause problem with graduation prayer. 505 U.S. at 594-95. The *Lee* Court did not address state coercion in the Free Exercise context. For Ms. Bauchman to argue it is impermissible to excuse her from participation, but rather she must be allowed to participate in a Choir that only performs songs of the nature she demands, appears to be an attempt to bootstrap her Free Exercise claim with her Establishment Clause argument. Courts have long recognized that absent an Establishment Clause violation, the existence of a conflict between an individual student's or her parents' religious beliefs and a school activity does not necessarily require the prohibition of a school activity. Such conflicts are inevitable. *Florey*, 619 F.2d at 1318. In other words, while the Free Exercise clause protects, to a degree, an individual's right to practice her religion within the dictates of her conscience, it does not convene on an individual the right to dictate a school's curricula to conform to her religion.

"'[T]he Free Exercise clause is written in terms of what the government cannot do to the individual, not in terms of what the individual can exact from the government.'" *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S.

-39-

439, 451 (1988) (quoting *Sherbert v. Verner*, 374 U.S. 398, 412 (1963) (Douglas, J. concurring)). Accordingly, "public schools are not required to delete from the curriculum all materials that may offend any religious sensibility." *Florey*, 619 F.2d at 1318. Having concluded the State of Utah is not coercing Ms. Bauchman to violate her religious beliefs, we reject any invitation to obscure the appropriate scope of her Free Exercise claim by addressing issues of curriculum content. We leave those issues to our analysis of Ms. Bauchman's Establishment Clause claim, and uphold the district court's conclusion she failed to state a Free Exercise claim.

c.     Freedom of Speech Clause.

Ms. Bauchman relies on the same allegations she asserted in her Free Exercise claim to support her Free Speech claim. In essence, she argues the practice and performance of Christian devotional music at religious sites as part of the regular, graded, Choir curriculum have deprived her of her constitutional right to refrain from speaking.

The First Amendment certainly prohibits the government from compelling speech. *See, e.g., Wooley v. Maynard*, 430 U.S. 705, 714 (1977). Here again, however, a threshold element of Ms. Bauchman's claim is coercion or compulsion. *See id.* at 714-15; *Mountain States Legal Foundation v. Costle*, 630 F.2d 754,

769-70 (10th Cir. 1980), *cert. denied*, 450 U.S. 1050 (1981).  For the same reasons discussed in the context of  Ms. Bauchman's  Free Exercise claim, we conclude her complaint fails to allege facts sufficient to show she was coerced or compelled to engage in any Choir activities (practicing or performing songs she found offensive in venues she found offensive) against her will.  The district court properly dismissed Ms. Bauchman's Free Speech claim for having failed to establish a necessary element of the alleged violation.

B.    DENIAL OF OPPORTUNITY TO AMEND[12]

The district court concluded the only material difference between Ms. Bauchman's proposed amended complaint and her original pleadings was a "new" allegation or theory that it was not just the singing of Christian songs in religious venues that violated her constitutional rights, but rather the fact that Mr. Torgerson selected and performed Christian music at religious venues for the specific purpose of promoting religion.  In light of this new theory, the district court deferred ruling on Ms. Bauchman's motion to amend until the parties had an opportunity to complete limited discovery regarding the purpose of Mr.

---

[12]  We have fully addressed the issues Ms. Bauchman raised in protest of the district court's denial of her motion for reconsideration in our affirmance of the district court's order dismissing Ms. Bauchman's complaint.  The remainder of our analysis therefore focuses on Ms. Bauchman's motion to amend her complaint.

Torgerson's alleged unconstitutional conduct. The district court further limited discovery to Mr. Torgerson's actions during the year Ms. Bauchman was a Choir member, unless Ms. Bauchman could establish a "clear and concise nexus" between Mr. Torgerson's alleged past conduct and the injuries she claims she incurred in 1994-95.

After considering the parties' post-discovery evidence and argument pertaining to the motion to amend, the district court rejected Ms. Bauchman's efforts to resurrect her Free Exercise, Free Speech, Religious Freedom Restoration Act, and State constitutional claims, and reaffirmed its original ruling that "choir singing of religious music does not automatically equate with praying, and that the selection of Christian songs and the singing of Christian music in religious venues does not per se constitute a violation of the Establishment Clause." As to Ms. Bauchman's claim Mr. Torgerson pursued religious rather than secular purposes, the district court ruled that Ms. Bauchman's allegations and evidence, when judged by a reasonable observer standard, were insufficient to sustain an Establishment Clause claim. According to the district court, any pursuit of Ms. Bauchman's proposed amended complaint would be futile, as the allegations failed to state an Establishment Cause claim, and the undisputed materials facts would support a dismissal on summary judgment. The district

court further concluded Ms. Bauchman's motion to amend was untimely, since the essential facts upon which she based her proposed amendment were known prior to dismissal of her original complaint.

Ms. Bauchman challenges these rulings, arguing (1) the proposed amended complaint adequately states a cause of action and therefore is not futile; (2) the district court committed plain error by refusing to permit discovery of, or to consider, evidence of Mr. Torgerson's conduct prior to the 1994-95 school year; (3) the district court improperly applied a summary judgment standard to her motion to amend; and, (4) her motion to amend was timely. We consider Ms. Bauchman's arguments in turn.

1. Standard of Review.

To safeguard a plaintiff's opportunity to test her claims on the merits, Rule 15(a) of the Federal Rules of Civil Procedure provides that leave of the court to amend the pleadings should be freely given when justice requires. Fed. R. Civ. P. 15(a). Accordingly, a district court must justify its denial of a motion to amend with reasons such as futility of amendment or undue delay. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Hom v. Squire*, 81 F.3d 969, 973 (10th Cir. 1996). We review the district court's decision that Ms. Bauchman's motion to amend her

complaint was both futile and untimely for abuse of discretion. *Hom*, 81 F.3d at 973.

2.    Futility.

As to the allegations supporting Ms. Bauchman's Free Exercise and Free Speech claims, we agree with the district court there is no material difference between the two complaints. Consequently, because we hold the district court did not err in dismissing Ms. Bauchman's Free Exercise and Free Speech claims, we necessarily conclude the district court did not abuse its discretion by denying Ms. Bauchman's motion to amend. Further analysis beyond our evaluation of the district court's order dismissing those claims is unnecessary.

As to Ms. Bauchman's Establishment Clause claim, we note the following material differences between the original and amended complaints: (1) the amended complaint clearly asserts defendants' conduct was motivated by a religious purpose; (2) the amended complaint contains numerous allegations to support Ms. Bauchman's claim that Mr. Torgerson has unconstitutionally promoted his religious beliefs in the classroom for over twenty years; and (3) the amended complaint meticulously identifies each individual defendant together with his or her alleged responsibility for Mr. Torgerson's conduct or curriculum

choices. Ms. Bauchman also presented the district court with eight affidavits in support of her amended complaint. Aside from Ms. Bauchman's affidavit concerning her Choir experiences during the 1994-95 school year and Ms. Deirdre Lynch's affidavit concerning the events at West High School's 1995 graduation exercises, the remaining affidavits describe Mr. Torgerson's alleged conduct as a music teacher during the two decades prior to the 1994-95 school year. Both parties relied on deposition transcripts and exhibits collected during the course of discovery to support their respective arguments regarding the propriety of Ms. Bauchman's motion to amend. The test is whether the proposed amendments, as supported by the affidavits or other evidence, cure the deficiencies in the original complaint. *See, e.g., Mountain View Pharmacy v. Abbott Lab.*, 630 F.2d 1383, 1386, 1389 (10th Cir. 1980) (court of appeals gave plaintiffs benefit of any supporting allegations contained in sworn factual certificate submitted with the amended complaint when evaluating motion for leave to amend).

We first consider the allegations and evidence concerning Mr. Torgerson's conduct prior to the 1994-95 school year. Relying on Justice O'Connor's concurring opinion in *Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 777-79 (1995), Ms. Bauchman asserts Mr. Torgerson's "pattern of conduct" dating back twenty years is necessary to understand the "pattern, history and

context" of the alleged unconstitutional conduct and thus establish that Mr. Torgerson was furthering a religious purpose through his direction of Choir activities in 1994-95. Thus, she argues the district court improperly curtailed discovery to that period of time Ms. Bauchman was a Choir member. We disagree.

Ms. Bauchman's allegations regarding Mr. Torgerson's past conduct are irrelevant to her Establishment Clause claim for three reasons. First, as previously discussed, the "actual" purpose component of the endorsement analysis begins by asking whether there is a lack of a clearly secular purpose, not whether there is any religious purpose present. *See Jaffre*, 472 U.S. at 56; *Lynch*, 465 U.S. at 680-81. This threshold determination is an objective one, removed from any subjective intent Mr. Torgerson may have. As previously discussed, Ms. Bauchman never alleged the defendants lacked a secular purpose.

Second, while Justice O'Connor noted a reasonable observer evaluating whether government conduct has the effect of endorsing religion "must be deemed aware of the history and context of the community and forum" in which the conduct occurs, she imparted such knowledge to the reasonable observer in the broad sense of community awareness, not in the sense that a reasonable observer

would have knowledge of every alleged past constitutional violation of a particular defendant. *Capitol Square*, 115 S. Ct. at 2454-55 (O'Connor, J., concurring). There simply is no indication Justice O'Connor intended her statements to condone the use of alleged past violations suffered by nonparties to bootstrap the constitutional claims of a present litigant. Ms. Bauchman has never claimed to be suing in a representative capacity for past Choir members. Her standing to sue therefore is limited to claims related to the infringement of her own constitutional rights while she was a Choir member. Accordingly, the allegations and evidence relevant to Ms. Bauchman's claims are limited to defendants' conduct and events during the 1994-95 school year. The district court did not abuse its discretion by so limiting discovery and its analysis of Ms. Bauchman's claims.

Finally, any attempt to use allegations regarding Mr. Torgerson's past conduct to evidence a continual, controlling unexpressed or psychological motive to further a religious purpose by selecting religious songs and religious performance venues oversteps what we believe are pragmatic limits on the nature of our inquiry into the "actual" *purpose* of the challenged conduct. Put simply, our examination must stop short of an attempt to discern a defendant's psychological *motives vis à vis* his past conduct, underlying belief system or

religious character. *See Westside Community Bd. of Educ. v. Mergens*, 496 U.S. 226, 249 (1990) (plurality) (recognizing distinction between "actual" religious purpose and possible religious motives); *Jaffre*, 472 U.S. at 74 (O'Connor, J., concurring) (same). We must focus instead on objectively discernible conduct or communication that is temporally connected to the challenged activity and manifests a subjective intent by the defendant to favor religion or a particular religious belief.

We focus our inquiry on concrete manifestations of intent for a number of reasons. First, it is likely impossible to discern a sole psychological motive for Mr. Torgerson's conduct, past or present. *See Edwards*, 482 U.S. at 636-37 (Scalia, J., dissenting). Additionally, we fear that to impose constitutional liability on curriculum decisions based on psychological motives inferred from a teacher's past conduct or religious character would be to (1) impermissibly subject religious teachers to a unique disability simply by virtue of their devout status, *see Mergens*, 496 U.S. at 248 (O'Connor, J., plurality opinion); *Edwards*, 482 U.S. at 615 (Scalia, J. dissenting) (court does not presume "the sole purpose of a law is to advance religion merely because it is supported strongly by organized religions or by adherents of particular faiths"); (2) render legitimate public school curricula decisions affecting a diverse array of students vulnerable to protracted

litigation initiated by a single, "offended" student, thereby involving the courts in educational policy decisions best left to the states and locally elected school boards, *Edwards*, 482 U.S. at 605 (Powell, J., concurring) (interference with the decisions of local public school authorities is "warranted only when the purpose for their decisions is clearly religious"); (3) discourage school districts from hiring teachers known to have strong religious beliefs; and (4) due to the inherent difficulty of attempting to discern an individual's unexpressed or psychological motive, exacerbate what is already perceived to be a morass of inconsistent Establishment Clause decisions. The Establishment Clause does not require such results. Instead, an Establishment Clause claim like the one before us must be supported by allegations of conduct or statements that expressly (without resorting to psychoanalysis) indicate the defendant believed his selection of songs and performance venues would serve a religious *purpose* -- *e.g.*, constitute religious exercises, cause students to become religious, or cause students to adopt particular religious beliefs. Ms. Bauchman's allegations concerning Mr. Torgerson's past conduct provide no such indication of a religious purpose during the 1994-95 school year.

Next, we evaluate whether the remaining allegations or evidence change our earlier analysis that Ms. Bauchman failed to allege an Establishment Clause

violation. Ms. Bauchman's proposed amended complaint and supplemental materials expand upon and emphasize certain conduct and events related to the allegations in her original complaint (*i.e.*, the performance of religious music, the performance at religious sites, and the public ridicule and harassment she experienced as a result of the defendants' collective response to her objections.) The specific nature of Ms. Bauchman's augmented allegations and the evidence pertaining to those allegations are thoroughly addressed in the district court's Memorandum Decision and Order Denying Leave to Amend. *Bauchman v. West High Sch.*, 1996 WL 407856 (D. Utah May 30, 1996). We can add little to the district court's analysis. Having carefully reviewed the entire record before the district court, we respect Ms. Bauchman's individual perception as to the religious purpose and effect of these events and Mr. Torgerson's conduct, generally. Ultimately, however, we conclude that although Ms. Bauchman's allegations may support an observation that Mr. Torgerson is a religious man who struggles to expunge his spiritual convictions from his teaching, they fall short of supporting the required elements of an Establishment Clause claim -- *e.g.*, Mr. Torgerson actually taught or proselytized his religious beliefs, advocated Christianity in

general, condemned or criticized others' beliefs, conducted or permitted prayer or other religious exercises by or with Choir members.[13]

Apparently based on the district court's statement that her proposed amended complaint "would be subject to dismissal under a motion for summary judgment," Ms. Bauchman urges us to conclude the district court improperly applied a summary judgment standard when considering her motion to amend. The district court's order, read as a whole, makes clear the court did not grant summary judgment against Ms. Bauchman. Rather, the district court thoroughly considered Ms. Bauchman's amended complaint together with any support for her allegations from the affidavits, deposition transcripts and exhibits presented by both parties, and after such review concluded Ms. Bauchman still failed to state a claim under the Establishment Clause. As discussed above, we agree with and uphold that conclusion. The district court went further to conclude the relevant undisputed facts related to defendants' conduct during the 1994-95 school year would subject Ms. Bauchman's proposed amended complaint to dismissal on summary judgment as well. This conclusion in and of itself did not convert the

---

[13] It follows that absent sufficient factual allegations to support an Establishment Clause claim, the remaining allegations in Ms. Bauchman's amended complaint concerning the identity, role and liability of individual defendants are of no import.

district court's analysis into a ruling on summary judgment.  It simply provided an alternative ground for application of the futility doctrine.  A court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment.  *See, e.g.*, *AM Int'l, Inc. v. Graphic Management Assocs., Inc.*, 44 F.3d 573, 578 (7th Cir. 1995); *Wilson v. American Trans Air, Inc.*, 874 F.2d 386, 392 (7th Cir. 1989).  Ms. Bauchman's argument to the contrary is without merit and seems disingenuous, since she herself participated in discovery and presented supporting materials for the court's consideration.

In sum, we agree with the district court that Ms. Bauchman's proffered amended complaint and supporting evidence and affidavits fail to cure the deficiencies in her original complaint.  As such, the district court did not abuse its discretion by denying Ms. Bauchman's motion for leave to amend as futile.

### 3. Timeliness.

The district court cited Ms. Bauchman's failure to amend prior to a ruling on defendants' motion to dismiss and her failure to allege any "essential" facts not otherwise known prior to the dismissal of her original complaint as an alternative

ground for denying Ms. Bauchman's motion to amend her complaint. We question the district court's rationale under circumstances where, as here, the court deliberately deferred ruling on Ms. Bauchman's motion to amend pending the completion of additional, limited discovery related to her newly asserted theory that defendants' conduct was primarily for the purpose of promoting or proselytizing religion. We need not decide this issue, however, in light of our concurrence with the district court's decision that Ms. Bauchman's motion to amend was futile. Further discussion of the timeliness of an amended complaint proffered after dismissal and subsequent court-authorized discovery is best left for another day.

V. CONCLUSION

We acknowledge, as has the United States Supreme Court, that jurisprudence in this arena "is of necessity one of line-drawing, of determining at what point a dissenter's rights of religious freedom are infringed by the State." *Lee v. Weisman*, 505 U.S. at 598. The task of distinguishing between real constitutional threat and "'mere shadow'" is a difficult one, *id*. (quoting *School Dist. of Abington v. Schempp*, 374 U.S. 203, 308 (1963) (Goldberg, J., concurring)), and is perhaps more appropriately undertaken on summary judgment or after trial. However, for the reasons stated above, we conclude Ms. Bauchman

-53-

has failed to demonstrate a real constitutional threat by way of her complaint or proposed amended complaint. We therefore **AFFIRM** the district court's dismissal of Ms. Bauchman's § 1983 claims. We also **AFFIRM** the district court's decision denying Ms. Bauchman leave to amend her complaint. We **REMAND** Ms. Bauchman's state constitutional claims to the district court, with instructions to dismiss those claims without prejudice for lack of federal subject matter jurisdiction. Finally, we **DISMISS** Ms. Bauchman's claims for injunctive and declaratory relief as moot.

95-4084, 96-4101, *Bauchman v. West High School, et al.*

Murphy, Circuit Judge, concurring in part and dissenting in part.

## I. INTRODUCTION

The court today holds that detailed allegations of deliberate, intentional, and purposeful endorsement of religion by a public high school teacher are insufficient to state an Establishment Clause civil rights claim. Majority Op. at 44-50. Because the majority's ruling, reasoning, and the necessary consequences thereof are inconsistent with the Establishment Clause as interpreted by the Supreme Court, I respectfully dissent.

The majority appears to reach its conclusion by finding a distinction between Richard Torgerson's[1] "motive" and "purpose." In light of this distinction, never before applied by this court or the Supreme Court in the context of an Establishment Clause civil rights claim, the majority holds that Torgerson's "psychological motive" in selecting the Choir's repertoire and performance venues is constitutionally irrelevant in determining whether he acted with the

---

[1]Because the liability of each defendant in this case is in some sense derivative from Torgerson's liability, the majority opinion focuses exclusively on the alleged conduct of Torgerson in analyzing whether Bauchman's original or proposed amended complaint states a claim upon which relief can be granted. This separate opinion does likewise. This is not to say, however, that the governmental defendant, Salt Lake City School District, is in any way responsible for Torgerson's or the other individual defendants' alleged unconstitutional acts under the doctrine of respondeat superior. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).

"actual purpose" of advancing religion. *Id.* at 47-50. Finally, taking its new constitutional rule of relevance to an extreme, the majority holds that Torgerson's alleged past acts of religious endorsement are also irrelevant because past acts demonstrate only "psychological motive," not "actual purpose." *Id.*

As detailed below, the majority's rigid view of pleading and proof of an Establishment Clause civil rights claim is inconsistent with Supreme Court precedent. In sharp contrast to the constitutional distinction drawn by the majority, the Supreme Court has routinely used the terms "motive" and "purpose" interchangeably in this context. Furthermore, the cases cited by the majority for the conclusion that motive is never relevant under the endorsement test's purpose prong are inapplicable and the policy concerns identified by the majority in support of its new rule of relevance are far from compelling. Finally, the majority's unexplained conclusion that past acts of misconduct are always irrelevant is inconsistent with the Federal Rules of Evidence and with precedent in an analogous area of the law.

The majority has so radically restricted pleading and proof of an improper purpose as to nullify the endorsement test's purpose prong. Beyond eviscerating the Establishment Clause as a protective citadel against religious and antireligious conduct by teachers and other public employees, the majority's approach defies a fundamental constitutional precept: "If there is any fixed star in our constitutional

constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *West Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). Unfortunately, that "fixed star" shines less brightly today.

## II. THE ENDORSEMENT TEST'S PURPOSE PRONG

The Establishment Clause of the First Amendment provides that the federal government "shall make no law respecting an establishment of religion." U.S. Const. amend. I. This prohibition extends to state governments and their political subdivisions by operation of the Fourteenth Amendment. *See Wallace v. Jaffree*, 472 U.S. 38, 48-49 (1985); *Engel v. Vitale*, 370 U.S. 421, 430 (1962). To determine whether Bauchman's original or proposed amended complaint states a claim upon which relief can be granted, this court must evaluate whether Torgerson's alleged conduct violates the Establishment Clause under the criteria set forth by the Supreme Court in *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971), and its progeny.

In *Lemon*, the seminal Establishment Clause case, the Supreme Court set forth a three-part test for evaluating the constitutionality of government action. Under that test, a government action will not violate the Establishment Clause as

long as (1) it has a secular purpose, (2) does not have a principal or primary effect that either advances or inhibits religion, and (3) does not foster an excessive government entanglement with religion. *See id.*

Although the Supreme Court continued to apply the three-part *Lemon* test to Establishment Clause claims throughout the 1970s, *Lemon* came under increasing attack in the early 1980s. *See* Majority Op. at 20-21 (collecting cases attacking *Lemon*). In 1984, Justice O'Connor utilized the opportunity presented in *Lynch v. Donnelly*, 465 U.S. 668 (1984), to suggest a "clarification" of the Supreme Court's Establishment Clause jurisprudence. That "clarification" has come to be known as the endorsement test.

In *Lynch*, a divided Supreme Court held that the city of Pawtucket's inclusion of a crèche, along with a wide array of secular Christmas decorations, in a downtown Christmas display did not violate the Establishment Clause. *See id.* at 685, 687 (plurality opinion); *id.* at 694 (O'Connor, J., concurring). In a concurring opinion, Justice O'Connor identified the bedrock principles underlying the Establishment Clause and opined that there was not a clear nexus between those principles and the criteria set out in *Lemon*. According to Justice O'Connor:

> The Establishment Clause prohibits government from making adherence to a religion relevant in any way to a person's standing in the political community. Government can run afoul of that prohibition in two principal ways. One is excessive entanglement

with religious institutions . . . .  The second and more direct infringement is government endorsement or disapproval of religion. . . .

Our prior cases have used the three-part test articulated in *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971), as a guide to detecting these two forms of unconstitutional government action.  It has never been entirely clear, however, how the three parts of the test relate to the principles enshrined in the Establishment Clause.  Focusing on institutional entanglement and on endorsement or disapproval of religion clarifies the *Lemon* test as an analytical device.

*Id.* at 687-89 (O'Connor, J., concurring) (citations and footnote omitted).

As to the endorsement component of her clarified Establishment Clause

analysis, Justice O'Connor noted:

The central issue in this case is whether Pawtucket has endorsed Christianity by its display of the crèche.  To answer that question, *we must examine both what Pawtucket intended to communicate in displaying the crèche and what message the city's display actually conveyed.*  The purpose and effect prongs of the *Lemon* test represent these two aspects of the meaning of the city's action.

*The meaning of a statement to its audience depends both on the intention of the speaker and on the "objective" meaning of the statement in the community.*  Some listeners need not rely solely on the words themselves in discerning the speaker's intent: they can judge the intent by, for example, examining the context of the statement or asking questions of the speaker.  Other listeners do not have or will not seek access to such evidence of intent.  They will rely instead on the words themselves; for them the message actually conveyed may be something not actually intended.  If the audience is large, as it always is when government "speaks" by word or deed, some portion of the audience will inevitably receive a message determined by the "objective" content of the statement, and some portion will inevitably receive the intended message.  *Examination of*

*both the subjective and the objective components of the message communicated by a government action is therefore necessary to determine whether the action carries a forbidden meaning.*

*The purpose prong of the Lemon test asks whether government's actual purpose is to endorse or disapprove of religion. The effect prong asks whether, irrespective of government's actual purpose, the practice under review in fact conveys a message of endorsement or disapproval. An affirmative answer to either question should render the challenged practice invalid.*

*Id.* at 690 (O'Connor, J., concurring) (emphasis added).

In focusing specifically on the purpose prong of her endorsement test, Justice O'Connor noted that "[t]he purpose prong of the *Lemon* test requires that a government activity have a secular purpose." *Id.* (O'Connor, J., concurring). According to Justice O'Connor, however, "[t]hat requirement is not satisfied . . . by the mere existence of *some secular purpose*, however dominated by religious purposes." *Id.* at 690-91 (O'Connor, J., concurring) (emphasis added). Thus, under the endorsement test formulated by Justice O'Connor, "[t]he proper inquiry under the purpose prong of *Lemon* . . . is whether the government intends to convey a message of endorsement or disapproval of religion." *Id.* at 691 (O'Connor, J., concurring).

The above-quoted passages establish that Justice O'Connor, the originator of the endorsement test, believes the proper focus of the purpose prong is the subjective purpose of the governmental actor. The question then becomes whether a majority of the Court has embraced the endorsement test and, if so,

whether a majority has embraced Justice O'Connor's views of the purpose prong. Unfortunately, the task of parsing the Supreme Court's recent Establishment Clause cases is nothing short of Herculean. A careful reading of the Court's post-*Lynch* opinions, however, leads to the conclusion that a majority of the Court has adopted Justice O'Connor's emphasis on endorsement. *See County of Allegheny v. ACLU*, 492 U.S. 573, 592 (1989) (holding for majority of court that "[i]n recent years, we have paid particularly close attention to whether the challenged governmental practice either has the purpose or effect of 'endorsing' religion"). Although the Supreme Court's discussion of the issue is perhaps opaque, recent cases support the conclusion that a majority of the Court would invalidate any governmental action subjectively intended to endorse religion.

In *Wallace v. Jaffree*, 472 U.S. 38, 56-61 (1985), the Supreme Court struck down under *Lemon*'s purpose prong an Alabama statute authorizing a one-minute moment of silence in all public schools "for meditation or voluntary prayer." Citing to Justice O'Connor's concurring opinion and Justice Brennan's dissenting opinion in *Lynch*, the Court in *Wallace* noted that "even though a statute that is motivated in part by a religious purpose may satisfy [*Lemon*'s] first criterion, the First Amendment requires that a statute must be invalidated if it is entirely motivated by a purpose to advance religion." *Id.* at 56 (citation omitted). According to *Wallace*, "In applying the purpose test, it is appropriate to ask

'whether government's *actual* purpose is to endorse or disapprove of religion.'" *Id.* (quoting *Lynch*, 465 U.S. at 690 (O'Connor, J., concurring)). In concluding that the statute at issue was actually motivated by a religious purpose, the Court examined the legislative history of the statute, focusing particularly on statements of the Act's sponsor that the motivation behind the Act was to return prayer to public schools. *See id.* at 56-57, 57 n.43.

It is clear that the Court focused on the Alabama legislature's subjective legislative purpose, rather than some possible objectively identifiable secular purpose for enacting the statute at issue. That focus on subjective legislative purpose is mirrored and amplified in the concurring opinions of Justices Powell and O'Connor. In his concurring opinion, Justice Powell stated the test as follows: "The first inquiry under *Lemon* is whether the challenged statute has a 'secular legislative purpose.' As Justice O'Connor recognizes, this secular purpose must be 'sincere'; a law will not pass constitutional muster if the secular purpose articulated by the legislature is merely a 'sham.'" *Id.* at 64 (Powell, J., concurring) (citations omitted).

Employing the analysis she developed in *Lynch*, Justice O'Connor also found the Act at issue unconstitutional. As was the case with Justice Powell, it is clear that Justice O'Connor's opinion is based on an analysis of the legislature's subjective intent in passing the Act. *See id.* at 75-79 (O'Connor, J., concurring in

judgment); *cf. Edwards v. Aguillard*, 482 U.S. 578, 585, 590-92 (1987) (striking down Louisiana Creationism Act because legislature's "preeminent," "predominant," "primary," and "actual" purpose in passing the legislation was to advance religion); *id.* at 610 (Scalia, J., dissenting) ("Even if I agreed with the questionable premise that legislation can be invalidated under the Establishment Clause on the basis of its motivation alone, without regard to its effects, I would still find no justification for today's decision.").

The decisions in *Wallace* and *Edwards* illustrate that in recent years the Supreme Court has focused on the subjective intent of the governmental actor in analyzing whether governmental action fails for an improper purpose.[2] *Cf. Board*

---

[2]According to Justice O'Connor, the Supreme Court's focus on "actual" subjective intent is the reason that so few cases are decided under *Lemon*'s purpose prong. Evidence of a subjective intent to advance religion is often difficult to develop. Nevertheless, Justice O'Connor, the developer of the endorsement test, seems undeterred by this fact. According to Justice O'Connor:

> It is not a trivial matter . . . to require that the legislature manifest a secular purpose and omit all sectarian endorsements from its laws. That requirement is precisely tailored to the Establishment Clause's purpose of assuring that government not intentionally endorse religion or a religious practice. It is of course possible that a legislature will enunciate a sham secular purpose for a statute. I have little doubt that our courts are capable of distinguishing a sham secular purpose from a sincere one, or that the *Lemon* inquiry into the effect of an enactment would help decide those close cases where the validity of an expressed secular purpose is in doubt. While the secular purpose requirement alone may rarely be determinative in striking down a statute, it nevertheless serves an important function. It reminds government that when it acts it should do so without endorsing a particular religious belief or practice that all citizens do

*of Educ. v. Grumet*, 512 U.S. 687, 737 (1994) (Scalia, J., dissenting) (noting that Court's decision to strike down specially created school district was based, in part, on its conclusion that creation of district was "religiously motivated"). Thus, it is equally clear that this court must focus on subjective purpose in deciding whether Bauchman's original or proposed amended complaint states a viable Establishment Clause civil rights claim.

## III.  THE MAJORITY OPINION

The majority begins its analysis of *Lemon* in a seemingly unexceptional manner.  It correctly notes that this court must apply the *Lemon* criteria as clarified by recent Supreme Court cases which focus on whether the challenged governmental action "endorses" religion.  *See* Majority Op. at 19-25.  As to the endorsement test, the majority notes the effect prong "should evaluate whether a 'reasonable observer,' aware of the history and context of the community in which the conduct occurs, would view the practice as communicating a message of government endorsement or disapproval."  *Id.* at 22.  The majority also grudgingly recites that the purpose prong encompasses a subjective analysis which "should evaluate whether the government's 'actual' purpose is to endorse

---

not share.
*Wallace v. Jaffree*, 472 U.S. 38, 75-76 (1985) (O'Connor, J., concurring in judgment).

or disapprove of religion." *Id.* at 22, 24 (concluding that purpose prong contains a subjective test of "actual purpose" but opining that the purpose prong is an "unworkable standard" that "yields unprincipled results").  Finally, after again expressing its displeasure, the majority correctly concludes that a violation of **either** the subjective purpose prong **or** the objective effect prong is sufficient to invalidate the challenged practice under the First Amendment.  *See id* at 24-25.

Thus, the majority's initial articulation of the endorsement test's purpose prong appears no different than the articulation in this separate opinion.  *Compare id.* at 19-25 *with supra* Section II of this separate opinion.  The majority departs, however, when it applies the endorsement test's purpose prong to Bauchman's proposed amended complaint.  In concluding that the proposed amended complaint fails to state an Establishment Clause civil rights claim, the majority holds as follows:

> [A]ny attempt to use allegations regarding Mr. Torgerson's past conduct to evidence a continual, controlling unexpressed or psychological motive to further a religious purpose by selecting religious songs and religious performance venues oversteps what we believe are pragmatic limits on the nature of our inquiry into the "actual" *purpose* of the challenged conduct.  Put simply, our examination must stop short of an attempt to discern a defendant's psychological *motives vis à vis* his past conduct, underlying belief system or religious character.  *We must focus instead on objectively discernible conduct or communication that is temporally connected to the challenged activity and manifests a subjective intent by the defendant to favor religion or a particular religious belief.*

-11-

Majority Op. at 47-48 (citations omitted) (third emphasis added). The majority thereafter repeatedly declares that Torgerson's motivation in undertaking the acts at issue here is irrelevant and, furthermore, that his alleged past acts of endorsement are only demonstrative of motive and, therefore, are also irrelevant. *See id*. at 46-50. Finally, the majority concludes that an Establishment Clause civil rights claim will always fail at the pleading stage unless it is supported by allegations of "conduct or statements" which are "temporally connected to the challenged activity" and "expressly (without resorting to psychoanalysis) indicate the defendant believed his" actions would serve a religious purpose. *See id.*

The limitations imposed by the majority on the pleading and proof of an improper purpose under the Establishment Clause are unprecedented. The distinction drawn by the majority between motive and purpose finds no support in Supreme Court precedent. Furthermore, the majority's rigid views of allegations supportive of an improper purpose claim is at odds with the well-established rule that evidence of prior acts is relevant and admissible for the purpose of demonstrating "motive, opportunity, intent, preparation, plan, [and] knowledge." Fed. R. Evid. 404(b).

*A. Supreme Court Precedent*

The primary problem with the distinction drawn by the majority, and its concomitant rule of relevance, is that it finds no support in the Supreme Court's Establishment Clause jurisprudence.[3]  In fact, the Supreme Court has routinely used the terms "motive" and "purpose" interchangeably in discussing and applying the endorsement test's purpose prong. *See, e.g.*, *Wallace*, 472 U.S. at 56 ("For even though a statute that is **motivated** in part by a religious **purpose** may satisfy the first criterion, the First Amendment requires that a statute must be invalidated if it is entirely **motivated** by a **purpose** to advance religion." (citation omitted) (emphasis added)); *id.* at 59-60 ("We must, therefore, conclude that the Alabama Legislature . . . was **motivated** by the same **purpose** that the Governor's answer the second amended complaint expressly admitted . . . ." (emphasis added)); *id.* at 64 n.6 (Powell, J., concurring) (agreeing with majority that "'a statute must be invalidated if it is *entirely motivated* by a purpose to advance religion'"); *id.* at 86-87 (Burger, C.J., dissenting) (dissenting from

---

[3]It is clear that the law generally draws a distinction between an actor's motive and his intent or purpose.  *See* Black's Law Dictionary 1014 (6th ed. 1990) (setting out differences between motive and intent).  The question, however, is whether the Supreme Court has recognized that distinction in the context of the endorsement test's purpose prong and, more importantly, whether the Supreme Court has adopted a constitutional rule of relevance which makes evidence of motive invariably inadmissible to prove purpose.  As detailed more fully below, the answer to both questions is no.

majority conclusion that Alabama moment of silence statute was motivated by an improper purpose on ground that there was "not a shred of evidence that the legislature as a whole shared the sponsor's **motive**" (emphasis added)); *Edwards*, 482 U.S. at 613 (Scalia, J., dissenting) ("It is clear, first of all, that regardless of what "**legislative purpose**" may mean in other contexts, for the purpose of the *Lemon* test it means the "actual" **motives** of those responsible for the challenged action." (emphasis added)); *id.* at 614 (Scalia, J., dissenting) ("In all three cases in which we struck down laws under the Establishment Clause for lack of a secular **purpose**, we found that the legislature's sole **motive** was to promote religion." (emphasis added)); *id.* at 619 (Scalia, J., dissenting) (dissenting from majority's conclusion of improper purpose because court had "relatively little information upon which to judge the **motives** of those who supported the Act" (emphasis added)); *Bowen v. Kendrick*, 487 U.S. 589, 602-03 (1988) (repeatedly using the terms "motive" and "purpose" interchangeably in discussing whether act violated Establishment Clause); *Texas Monthly, Inc. v. Bullock*, 489 U.S. 1, 14 n.4 (1989) (using terms interchangeably in concluding exemption violated Establishment Clause); *Grumet*, 512 U.S. at 737 (Scalia, J., dissenting) (noting that Court's decision to strike down specially created school district was based, in part, on its conclusion that creation of district was "religiously **motivated**" (emphasis added)). As this lengthy list of citations and quotations demonstrates,

the Supreme Court has never drawn the sharp distinction between motive and purpose advocated in the majority opinion and has certainly never stated that a governmental actor's motives are immutably irrelevant to determining whether he acted with the purpose of approving or disapproving religion.

To the extent that the majority opinion relies on the Supreme Court's decision in *Board of Education v. Mergens*, 496 U.S. 226, 249 (1990) (plurality opinion) to support its conclusion that Torgerson's motive is constitutionally irrelevant, the majority misreads the opinion. *See* Majority Op. at 48.

In *Mergens*, the Supreme Court upheld the Equal Access Act, 20 U.S.C. §§ 4071-4074, against, *inter alia*, an Establishment Clause challenge. *See* 496 U.S. at 247-53 (plurality opinion); *id*. at 260-62 (Kennedy, J., concurring in part and concurring in the judgment); *id.* at 262-70 (Marshall, J., concurring in the judgment). During the process of applying the purpose prong to the Equal Access Act, a plurality of the Court noted as follows: "Even if some legislators were motivated by a conviction that religious speech in particular was valuable and worthy of protection, that alone would not invalidate the Act, because what is relevant is the legislative *purpose* of the statute, not the possibly religious *motives* of the legislators who enacted the law." *Id.* at 249 (plurality opinion). Contrary to the majority's implicit assertion to the contrary, *Mergens* does not stand for the proposition that the personal motives of the sole state actor in this case,

Torgerson, are invariably irrelevant under the endorsement test's subjectively oriented purpose prong.

There is a simple, clear, and threshold distinction rendering *Mergens* inapplicable to cases such as this one: *Mergens* did not involve a § 1983 civil rights claim against an individual state actor. *Mergens* instead involved the constitutionality of a legislative enactment. *See id.* at 247-53 (plurality opinion). The majority's reliance on *Mergens* in addressing the wholly distinguishable setting in which Bauchman challenges the acts of a single state actor, who was solely or principally responsible for the challenged conduct, is misplaced.

The plurality in *Mergens* noted that any inquiry into the purpose of a legislative enactment should be deferential and limited. *See id.* at 248-49 (plurality opinion). Such deference is predicated on the Supreme Court's respect for the role of Congress as a coequal branch of the federal government. *See id.* at 251 (plurality opinion). Nothing in this case indicates that the Court is likely to apply a similarly deferential standard to the actions of an individual state actor in an Establishment Clause civil rights suit under § 1983. In contrast to its deference to the collective actions of legislatures, the Supreme Court has specifically noted the unique power which public school teachers may wield over students. *See Edwards*, 482 U.S. at 583-84. More importantly, the Supreme Court refused to analyze the motives of individual legislators in *Mergens* because

the individual views of a single legislator say little about the legislative body's collective purpose in enacting a statute. *See Mergens*, 496 U.S. at 249 (plurality opinion). Because it is the collective purpose of the legislative body that is at issue when a statute is challenged under the Establishment Clause, a particular legislator's impermissible motives for introducing or voting for a statute are irrelevant. The motive, intent, and purpose of a state actor solely or principally responsible for conduct challenged under § 1983, however, is paramount.

### B. Constitutional Policy

In addition to its reliance on *Mergens*, the majority asserts that constitutional policy compels indifference to Torgerson's individual motivation. According to the majority, "to impose constitutional liability on curriculum decisions based on psychological motives inferred from a teacher's past conduct" would (1) "impermissibly subject religious teachers to a unique disability simply by virtue of their devout status"; (2) render legitimate curriculum decisions vulnerable to litigation and involve "the courts in educational policy decisions best left to the states and locally elected school boards"; (3) discourage school districts from hiring teachers known to have strong religious beliefs; and (4) "exacerbate what is already perceived to be a morass of inconsistent Establishment Clause decisions." Majority Op. at 48-49. Unfortunately, the majority merely recites this litany and does not further elaborate.

The majority's concern that religiously devout teachers will be disabled if their motives are deemed probative, the first and third policy arguments in the majority's litany, confuses the concepts of belief and purpose. Torgerson's religious beliefs are irrelevant to the determination of his purpose. *See Mergens*, 496 U.S. at 248 (plurality opinion). Allegations that Torgerson included religious songs in the Choir's repertoire, that he chose religious sites for performances, or that he is a devoutly religious man are insufficient to state a civil rights claim under the endorsement test's purpose prong. *See Edwards*, 482 U.S. at 605 (Powell, J., concurring); *see also infra* (concluding that Bauchman's original complaint fails to state a civil rights claim under the Establishment Clause). But merely because a religious person is not constitutionally presumed to have a religious purpose does not immunize that person from civil rights liability for intentional endorsement or disapproval of religion.[4]

---

[4]To the extent that the majority's public policy concerns focus on the dangers of considering a governmental actor's deeply held religious beliefs, as opposed to specific instances of past religious endorsement or disapproval, the concerns identified by the majority are not triggered in this case. Bauchman never argued on appeal that allegations regarding Torgerson's religious beliefs, either standing alone or in combination with his alleged past acts of misconduct, were sufficient to state a civil rights claim under the Establishment Clause. Instead, she has simply argued the unremarkable position that Torgerson's alleged past acts of misconduct, set out more fully below, are relevant to the question of whether he chose the Choir's repertoire and performance venues for the purpose of advancing religion.

The second policy in the majority's litany, the importance of local control over education, is equally unavailing. This court has not been asked to overturn a religiously neutral state or local school board policy, but has simply been asked whether the following allegation states a claim upon which relief can be granted: an individual teacher undertook certain actions in a secondary education classroom for the direct and specific purpose of advancing religion. Answering that question in the affirmative would not necessarily subject local school boards to any special danger. Instead, it would provide content to the Establishment Clause by prohibiting public school teachers from purposefully using their positions in the classroom to endorse or disapprove religion. Furthermore, although states and local school boards are "generally afforded considerable discretion in operating public schools,"[5] the Supreme Court has recognized "that the discretion of the States and local school boards in matters of education must be exercised in a manner that comports with the transcendent imperatives of the First Amendment." *Board of Educ. v. Pico*, 457 U.S. 853, 864 (1982). Moreover, the Court has repeatedly expressed the necessity of "monitoring compliance with the Establishment Clause in elementary and secondary schools." *Edwards*, 482 U.S. at 583-84. Its reasoning is unassailable:

---

[5]*Edwards*, 482 U.S. at 583.

-19-

> Families entrust public schools with the education of their children, but condition their trust on the understanding that the classroom will not purposely be used to advance religious views that may conflict with the private beliefs of the student and his or her family. Students in such institutions are impressionable and their attendance is involuntary. The State exerts great authority and coercive power through mandatory attendance requirements, and because of the students' emulation of teachers as role models and the children's susceptibility to peer pressure. Furthermore, "[t]he public school is at once the symbol of our democracy and the most pervasive means for promoting our common destiny. In no activity of the State is it more vital to keep out divisive forces than in its schools . . . ."

*Id.* at 584 (quoting *Illinois ex rel. McCollum v. Board of Educ.*, 333 U.S. 203, 231 (1948) (Opinion of Frankfurter, J.)) (citations omitted) (alteration and ellipses in original).

Finally, the majority concludes its litany with the wholly unsupported suggestion that to attribute any significance to a public school teacher's motives will "exacerbate what is already perceived to be a morass of inconsistent Establishment Clause decisions." Majority Op. at 49. Conceding for the sake of argument the characterization of the Supreme Court's Establishment Clause jurisprudence as being in "hopeless disarray" and in need of "[s]ubstantial revision," *id.* at 20, attributing constitutional significance to the motives of a public school teacher, who is principally, if not solely, responsible for the challenged conduct neither contributes to the disarray nor creates the need for revision. Consideration of the motivation of a teacher who is alleged to have

deliberately, intentionally, and purposefully endorsed or disapproved of religion will not further complicate Establishment Clause jurisprudence.

## C. Relevance of Prior Acts

It must be further noted the majority's conclusion that Torgerson's alleged past acts are irrelevant is suspect for the following three reasons: (1) the majority offers no reasoning at all for its conclusion that Torgerson's past acts of misconduct only demonstrate a "continual, controlling . . . motive to further a religious purpose," Majority Op. at 47, as opposed to a continual, controlling purpose to endorse religion; (2) the conclusion of irrelevance is at odds with Federal Rule of Evidence 404(b), which specifically provides that evidence of past conduct is admissible for the purpose of proving motive, intent, and knowledge; and (3) the conclusion of irrelevance is inconsistent with analogous case law under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-17.

At the very heart of the majority's decision in this case is the conclusion that Torgerson's past conduct of endorsement is irrelevant because it only serves to demonstrate a continuing psychological "motive" to "further a religious purpose," rather than a distinct purpose to endorse religion.[6] Majority Op. at 47;

---

[6]It is worth noting, albeit repetitiously, that the Supreme Court, using language identical to that rejected by the majority, has held "the First Amendment requires that a statute must be invalidated if it is entirely **motivated** by a **purpose** to advance religion." *Wallace*, 472 U.S. at 56 (emphasis added).

*see also id.* ("[A]llegations and evidence relevant to Ms. Bauchman's claims are limited to defendants' conduct and events during the 1994-95 school year."). The problem is that the majority never explains why past instances of misconduct only show a **continuing motive** rather than a **continuing purpose** to advance religion. Under the majority's rigid rule of relevance, a past expression of "actual purpose" is apparently converted into an irrelevant expression of motive by the mere passage of time. Under this novel view of relevance, an admission by a public school teacher that she constructed the curriculum for the direct **purpose** of advancing religion is somehow converted into a mere expression of **motive** during a subsequent year, even if the curriculum in question remains unchanged. Unfortunately, the majority has not cited any support for this novel proposition. A review of the relevant Supreme Court jurisprudence reveals the reason: no support for the proposition exists. Even assuming for the sake of argument that the majority's novel rule of past conduct is correct and allegations of Torgerson's past conduct of endorsement are somehow converted into mere expressions of motive, that motive is still relevant to prove that Torgerson acted with an improper purpose during the year in question.

The majority's conclusion that allegations concerning Torgerson's past acts of endorsement are irrelevant is also inconsistent with the Federal Rules of Evidence. The Federal Rules of Evidence provide as follows: "Evidence of other

-22-

crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ."  Fed. R. Evid. 404(b).  According to at least one noted commentator, "Rule 404(b) adopts an inclusionary approach, generally providing for the admission of all evidence of other acts that is relevant to an issue in trial, excepting only evidence offered to prove criminal propensity."  Weinstein's Federal Evidence § 404.20[3] (Joseph M. McLaughlin ed., 2d ed. 1997).  Furthermore, prior acts or wrongs are most frequently admitted in both civil and criminal trials to "show a pattern of operation that would suggest intent."  *Id.* § 404.22[1][a]; *see also Turley v. State Farm Mut. Auto. Ins. Co.*, 944 F.2d 669, 674-75 (10th Cir. 1991).  As detailed below, a pattern of conduct that would suggest intent is exactly what Bauchman alleged in her amended complaint.  The majority's conclusion that Torgerson's alleged past acts are irrelevant is clearly at odds with the "inclusionary approach" to such evidence set forth in the Federal Rules.

Finally, the majority's exclusion of Torgerson's alleged prior acts of misconduct is also inconsistent with this circuit's treatment of past misconduct in Title VII discrimination cases.  Title VII cases are particularly instructive on the admissibility of past acts of misconduct.  In both the Title VII arena and under the

-23-

endorsement test's purpose prong an otherwise perfectly lawful act becomes unlawful if it is undertaken with an interdicted state of mind.

This circuit has long held that evidence of prior or concurrent acts of discrimination against others is relevant and admissible to prove an otherwise unrelated claim of discrimination. *See Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1175 (10th Cir. 1996); *Honce v. Vigil*, 1 F.3d 1085, 1090 (10th Cir. 1993); *Pitre v. Western Elec. Co.*, 843 F.2d 1262, 1266-67 (10th Cir. 1988). As this court explained in *Pitre*, prior acts of discrimination are "'quite probative'" of the question whether current conduct is discriminatory. 843 F.2d at 1267 (quoting *Bazemore v. Friday*, 478 U.S. 385, 402 n.13 (1986)). This is especially true when the decision-making process has remained unchanged and the same person or persons are still in charge of making the hiring, promotion, and termination decisions, a circumstance, as detailed below, closely analogous to that in the instant case. *See id.* In those situations, "evidence of prior discrimination 'might in some circumstances support the inference that such discrimination continued.'" *Id.* (quoting *Bazemore*, 478 U.S. at 402). In light of the analogous nature of the inquiries under Title VII and Establishment Clause claims such as this, it seems particularly incongruous to exclude past acts of misconduct under the endorsement test when those same prior alleged acts of misconduct would be admissible to prove discriminatory intent under Title VII.

-24-

*D. Conclusion*

The distinction drawn by the majority between motive and purpose is at odds with the Supreme Court's consistent practice of using the terms interchangeably. At a minimum, even if an appropriate distinction can be drawn between the two, the Supreme Court's jurisprudence offers no support for the assertion that Torgerson's motive, while not dispositive, is irrelevant for the purpose of pleading and proving that he acted with an improper purpose. Furthermore, the policy arguments advanced by the majority in support of its position are far from compelling. Finally, the majority's rigid rule of relevance is inconsistent with the "inclusive approach" to such evidence embodied in the Federal Rules of Evidence and is inconsistent with this circuit's precedent in the analogous area of Title VII.

## III. APPLICATION OF THE ENDORSEMENT TEST'S PURPOSE PRONG

A proper application of the endorsement test's purpose prong justifies the district court's dismissal of Bauchman's original complaint for failure to state a claim. The district court erred, however, in denying Bauchman an opportunity to amend her complaint.

*A. Bauchman's Original Complaint*

As aptly noted by the majority, the gravamen of Bauchman's original complaint is as follows: the inclusion of religious songs in the Choir's repertoire and the performance of those songs at religious sites, standing alone, constituted a violation of the Establishment Clause. Bauchman does not allege in her original complaint that Torgerson selected either the Choir's repertoire or places of performance with the subjective purpose of advancing religion. Instead, Bauchman's allegations are limited to an implicit claim that the actions of Torgerson had the effect of endorsing religion. *See* Majority Op. at 25-27 (explaining at length basis for Bauchman's original complaint). So interpreted, the district court did not err in dismissing Bauchman's original complaint.

The inclusion of religious songs as part of a choir repertoire and the performance of a high school choir at churches, synagogues, wards, and other religious venues, standing alone, do not constitute *per se* violations of the Establishment Clause. *See Edwards*, 482 U.S. at 605 (Powell, J., concurring). As noted by the Fifth Circuit in *Doe v. Duncanville Independent School District*, 70 F.3d 402, 407 (5th Cir. 1995), a large percentage of choral music is "based on sacred themes or text." Given the prevalence of devotional lyrics in choral music, no reasonable person could conclude that the inclusion of religious songs in the Choir's repertoire had the effect of endorsing religion. Furthermore, no

reasonable, objective person could conclude that, standing alone, the inclusion of religious venues in the Choir's performance sites had the effect of endorsing religion. As a consequence, Bauchman's original complaint, which does not allege Torgerson acted with the purpose of advancing religion, fails to state a claim upon which relief can be granted.

*B. Bauchman's Amended Complaint*

Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend the pleadings after the time for amending as a matter of right "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court explained the approach that district courts should take in deciding whether to permit a party to amend the pleadings:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be "freely given."

*Id.* at 182. This court reviews the district court's decision to deny Bauchman's motion to amend for abuse of discretion. *See Hom v. Squire*, 81 F.3d 969, 973 (10th Cir. 1996).

*1. Futility*

The district court denied Bauchman's motion to amend on the grounds that her proposed amendments were futile. The majority also concludes that Bauchman's proposed amendments are futile,[7] and thus affirms the district court's denial of Bauchman's proposed amendments. The majority's conclusion that Bauchman's proposed amendments are futile is based, however, on its unduly rigid view of the nature of the endorsement test's purpose prong. Under a proper view of the Establishment Clause, Bauchman's proposed amended complaint, by alleging that Torgerson chose the Choir's repertoire and performance venues with the express purpose of advancing religion, along with her allegations regarding Torgerson's twenty-year pattern of misconduct, states a claim upon which relief can be granted.[8] Accordingly, the district court abused its discretion in rejecting

---

[7]The majority apparently reaches this conclusion on a significantly different ground than did the district court. The district court concluded that both the effect and purpose prongs of the endorsement test must be viewed objectively and, therefore, "actual" purpose was irrelevant. The majority explicitly rejects the district court's mistaken construction of the endorsement test's purpose prong, holding that Bauchman can state an Establishment Clause claim by demonstrating that the defendants' "'actual' purpose is to endorse or disapprove of religion." Majority Op. at 22.

[8]In conducting this futility analysis, it is important to be mindful of the procedural posture of this case. The district court dismissed Bauchman's original complaint under Fed. R. Civ. P. 12(b)(6) because that complaint failed to state a claim. On appeal, this court's analysis of futility must center on whether Bauchman's proposed amendments, as supported by the affidavits attached to her complaint, cure the deficiencies in her original complaint. *See Mountain View Pharmacy v. Abbott Lab.*, 630 F.2d 1383, 1386 (10th Cir. 1980). Thus, the real

-28-

Bauchman's proposed amendments as futile. *See Reliance Ins. Co. v. Mast Constr. Co.*, 84 F.3d 372, 375-76 (10th Cir. 1996) (holding that abuse of discretion is established if district court's decision is based on an error of law).

As the majority notes, Bauchman's proposed amended complaint "clearly asserts [Torgerson's] conduct was motivated by a religious purpose" and "contains numerous allegations to support [Bauchman's] claim that [Torgerson] has unconstitutionally promoted his religious beliefs in the classroom for over twenty years." Majority Op. at 44-46. In particular, Bauchman's proposed amended complaint and supporting affidavits allege that "Torgerson engaged for many years, and continues to engage, in the advocacy, promotion, endorsement and proselytizing of his religious beliefs and practices, which included requiring students to attend and participate in events during which religious worship has

---

question is whether Bauchman's proposed amendments state a claim upon which relief can be granted. In deciding whether Bauchman's proposed amendments state a claim,

> "We will uphold a dismissal [under Federal Rule of Civil Procedure 12(b)(6)] only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." In performing our review, we accept all well-pleaded allegations as true and construe them in the light most favorable to plaintiffs. We note that "'[t]he Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim.'"

*Maez v. Mountain States Tel. & Tel.*, 54 F.3d 1488, 1496 (10th Cir. 1995) (quotations and citations omitted).

occurred." The proposed amended complaint further alleges that Torgerson

undertook this course of activity for the express purpose of endorsing religion.

In support of her allegation that Torgerson chose the Choir's repertoire and

places of performance with the express purpose of endorsing religion, Bauchman

alleges a twenty-year pattern of misconduct on the part of Torgerson in the

administration of the Choir.[9] This alleged misconduct included, among other

allegations, the following:[10]

> In 1977, while employed as director of the A Cappella Choir
> Class at South High School in Salt Lake City, Torgerson forced the

---

[9]Bauchman's ability to discover evidence of Torgerson's past conduct was seriously hampered by the district court's ruling which limited discovery to the 1994-95 school year. The district court's order was based on its erroneous conclusion that evidence of "actual" purpose and intent was irrelevant because the endorsement test's purpose prong is viewed from an objective perspective. *See supra* note 7; *see also supra* Section III of this separate opinion (noting that Torgerson's past conduct is relevant and admissible for the purpose of proving Torgerson's motive, intent, and knowledge during the 1994-95 school year).

[10]In reciting the lengthy list of Torgerson's alleged past misdeeds, this separate opinion does not express any opinion on the ultimate admissibility upon a motion for summary judgment or at trial of any of the alleged past misdeeds. Nevertheless, the allegations raise a serious and substantial question about patterns of misconduct which may be admissible under Fed. R. Evid. 404(b) to prove intent, knowledge, and motive. *See supra* Section III of this separate opinion (discussing admissibility of Torgerson's alleged past misconduct for purpose of proving motive, intent, or knowledge). It must be noted, however, that before these alleged misdeeds could be admitted under Rule 404(b), they would be subject to the balancing of probativeness and prejudice set out in Fed. R. Evid. 403, a task that the district court did not undertake in light of its erroneous conclusion that the endorsement test's purpose prong operates as an objective test and its subsequent resolution of the case on the pleadings. *See supra* note 7 (discussing approach taken by district court).

students in his Choir class to attend the offering of prayers and sacraments at LDS worship services a[s] part of the regular, required, graded public school curriculum.

. . . .

During 1980, through his position as the director of the A Cappella Choir Class at South High School, Torgerson used an application form for admission to the Choir Class that inquired as to the applicant's religious affiliation. Torgerson inquired about the applicants religious affiliations in order to limit the Choir Class to members of the Church of Jesus Christ of Latter-Day Saints ("LDS Church") because the Choir Class regularly participated in LDS religious services, which participation included speaking and singing presentations by students. The Choir Class did not participate in the religious services of any other religious organization.

During the 1992-93 school year, when Torgerson was employed as the director of the A Cappella Choir class at West High School, Torgerson required the Choir Class to perform approximately once each month at LDS worship services.

. . . .

During the 1992-93 school year, and in the years following, Torgerson frequently discussed the religious content of the many religious devotional songs he required the West High School Choir Classes to sing and used the religious content of the songs to advocate his own religious beliefs.

During the 1993-94 school year, while employed as the director of the A Cappella Choir Class at West High School, Torgerson repeatedly advocated his religion in the Choir Class, frequently stated that he was aware of and disagreed with the United States Supreme Court decisions forbidding the advocacy of religion in public school classes, and frequently stated that he would continue in his advocacy of religion in public school classes even though he knew that doing so violated established law.

During the 1993-94 school year, Torgerson required the West High School Choir Classes to practice the religious song, "Lamb of God." During the practicing of "Lamb of God," Torgerson turned off the lights in the classroom and, to the outrage of several students, instructed the Choir Class to visualize "Jesus dying for our sins."

. . . .

During [a] Pacific Northwest Tour in Salem, Oregon, the West High School Choir Class performed at an LDS "fireside" service,

-31-

where Torgerson portrayed the Choir Class as an LDS religious choir. At the "fireside", LDS Choir Class members "bore their testimonies" about their personal relationship with Jesus and proclaimed that the LDS Church is the only true religion. The Choir Class performed solely Christian devotional music as part of the LDS worship services.

The proposed amended complaint and attached affidavits further allege that in the year immediately preceding the 1994-95 school year, Torgerson (1) utilized the religious content of the Choir's devotional songs to advocate his own religious beliefs; and (2) had the Choir perform at religious worship services where "LDS Choir Class members 'bore their testimonies' about their personal relationship with Jesus and proclaimed that the LDS Church is the only true religion." These subsidiary allegations relate directly to Bauchman's allegation that Torgerson chose the Choir's repertoire and performance venues for the prohibited purpose of advancing religion.[11] Under the majority's curious new rule of constitutional relevance, these past manifestations of purpose are somehow converted into mere irrelevant expressions of motive which fail to state an

---

[11]These subsidiary allegations are particularly significant in light of the fact Torgerson was officially reprimanded in April 1994 for offering a prayer before a Choir performance that took place at a Mormon worship service. At that service, the Choir allegedly performed only religious devotional music and Torgerson allegedly portrayed the Choir Class as an LDS religious choir. Because the Choir's repertoire remained the same and the Choir continued to perform at religious venues during the 1994-95 school year, a reasonable inference may be that Torgerson's pre-1994-95 expressed intent to endorse religion remained, but that his same intent was now merely unexpressed in light of the reprimand.

Establishment Clause civil rights claim. As detailed at length above, this is a particularly thin reed upon which to base a finding of futility.

The allegations that Torgerson chose the Choir's repertoire and performance venues for the specific purpose of advancing religion, along with the detailed supporting allegations, state a claim upon which relief can be granted. *See Jaffree*, 472 U.S. at 56; *Edwards*, 482 U.S. at 585; *Lynch*, 465 U.S. at 690 (O'Connor, J., concurring). Accordingly, the district court erred in concluding that Bauchman's proposed amendments were futile.[12] *See supra* note 8 (noting that the futility analysis in this case must focus on whether Bauchman's proposed amendments state a claim upon which relief can be granted and noting that 12(b)(6) dismissals are highly disfavored). Unfortunately, the majority compounds the district court's error and makes it the law of the circuit when it affirms the district court's finding of futility.

---

[12]As an alternative ground for concluding that Bauchman's proposed amendments were futile, the district court concluded that Bauchman's proposed amended complaint would also be subject to dismissal on summary judgment. Although the majority does not reach the merits of the district court's conclusion, it does note that proposed amendments may be denied as futile on this ground. Majority Op. at 51-52. The district court's conclusion that Bauchman's proposed amendments would not survive summary judgment is seriously flawed. As indicated above, the district court's conclusion was based on the erroneous assumption that the endorsement test's purpose prong is viewed objectively rather than subjectively. *See supra* note 7. Furthermore, because the district court erred in limiting formal discovery to the 1994-95 school year, *see supra* note 9, it did not have an adequate evidentiary picture upon which to resolve the summary judgment question.

*2. Timeliness*

The district court held that Bauchman's failure to amend her complaint prior to a ruling on defendants' motion to dismiss and her failure to allege any "essential" facts not otherwise known prior to the dismissal of her original complaint was an alternate ground for denying Bauchman's motion to amend. Because it concludes that Bauchman's proposed amendments are futile, the majority decides not to reach the district court's conclusion that Bauchman's proposed amended complaint was untimely. *See* Majority Op. at 52-53. Nevertheless, the majority "question[s] the district court's rationale under circumstances where, as here, the court deliberately deferred ruling on [Bauchman's] motion to amend pending the completion of additional, limited discovery related to her newly asserted theory that defendants' conduct was primarily for the purpose of promoting or proselytizing religion." *Id.*

The district court's "question[able]" conclusion that Bauchman's proposed amended complaint was untimely is manifestly unreasonable. *See F.D.I.C. v. Oldenburg*, 34 F.3d 1529, 1555 (10th Cir. 1994) (defining abuse of discretion as an arbitrary, capricious, whimsical, or manifestly unreasonable judgment). The fact that Bauchman did not allege any new "essential" facts in the amended complaint results from the district court's erroneous ruling which precluded any discovery concerning Torgerson's pre-1994-95 conduct on the theory that such

-34-

conduct was irrelevant to Bauchman's claim under the endorsement test's purpose prong. As indicated above, however, Torgerson's personal intent and motivation in selecting the Choir's repertoire and performance venues are relevant under the endorsement test's purpose prong and Torgerson's past conduct is relevant and potentially admissible under the Federal Rules of Evidence for the purpose of proving Torgerson's motive, intent, and knowledge during the 1994-95 school year.

Most importantly, there is no indication in the record and no district court findings that the defendants would have been prejudiced by allowing Bauchman to amend her complaint or that the proposed amendments were the product of bad faith or a dilatory motive on the part of Bauchman. *See Davis*, 371 U.S. at 182 (holding that leave to amend must be "freely given" in the absence of undue delay, bad faith, dilatory motive, or futility). In light of the absence of either bad faith, a dilatory motive, or prejudice to the defendants, the district court's decision that Bauchman's proposed amended complaint was untimely is manifestly unreasonable.

# V. CONCLUSION

Purposeful, deliberate, and intentional efforts to advance or disapprove religion violate the Establishment Clause. *See Lynch*, 465 U.S. at 687-90 (O'Connor, J., concurring). Bauchman's original complaint fails to state a claim upon which relief can be granted under this standard. Her original complaint does not contain a claim that Torgerson acted with the purpose of advancing religion and none of the actions alleged in the complaint have the inherent effect of advancing religion. Bauchman's proposed amended complaint, on the other hand, does state a claim upon which relief can be granted. The proposed amended complaint alleges that Torgerson selected the Choir's repertoire and places of performance with the deliberate purpose of advancing religion. Furthermore, Bauchman's amended complaint contains numerous subsidiary allegations which detail at length Torgerson's manifestations of that improper purpose over the previous twenty years. Despite the majority's conclusion to the contrary, the allegations regarding Torgerson's alleged past instances of misconduct are relevant to Bauchman's claim of an improper purpose and are sufficient to state an Establishment Clause civil rights claim.

A proper reading of Supreme Court precedent establishes that the Establishment Clause prohibits public school teachers from utilizing their positions for the deliberate purpose of endorsing or disapproving religion.

-36-

Bauchman's proposed amended complaint states a claim for relief under this standard. The bare sufficiency of Bauchman's proposed amended complaint does not, however, suggest that Bauchman should prevail on the merits or that she is even necessarily entitled to a trial on the merits. It means only that she has demonstrated the filing of her proposed amended complaint was not futile, she is entitled to discovery unconfined to the 1994-95 school year, and she should be allowed to proceed to the next appropriate test on the substantive issues under the Establishment Clause, whether that test be a motion for summary judgment or a trial on the merits. In short, the Establishment Clause issue in this case is in need of an adequate record.[13]

---

[13]In light of the majority's resolution of this case on the threshold issue that Bauchman's proposed amended complaint fails to state a claim, and in light of this dissent, it is neither necessary nor appropriate for this separate opinion to address the remaining multitude of alternative dispositive issues addressed by the parties on appeal.